159 P.3d 460 (2007)
SATOMI OWNERS ASSOCIATION, a Washington nonprofit corporation, Respondent,
v.
SATOMI, LLC, a Washington limited liability company, Appellant.
No. 56265-7-I.
Court of Appeals of Washington, Division 1.
June 11, 2007.
*462 Stellman Keehnel, Rogelio Omar Riojas, DLA Piper U.S. LLP, Anthony Todaro, Peterson Young Putra, Seattle, WA, Joel T. Salmi, Attorney at Law, Bellevue, WA, for Appellant.
Marlyn Kathryn Hawkins, Dean Eric Martin, Barker Martin PS, Seattle, WA, for Respondent.
Sharon Elizabeth Cates, Microsoft Corp, Redmond, WA, Thomas Fitzgerald Ahearne, Foster Pepper PLLC, Seattle, WA, Amicus Curiae on behalf of Master Builders Assoc. of King and Snohomish Counties.
Kit William Roth, DLA Piper Rudnick Gray Cary U.S. LLP Seattle, WA, Daniel Louis Dvorkin, Salmi & Gillaspy PLLC, Bellevue, WA, for Appellant and Amicus Curiae on behalf of Blakely Village, LLC.
Lori Kay McKown, David E. Chawes, Preg, O'Donnell & Gillett PLLC, Seattle, WA, Amicus Curiae on behalf of Leschi Corp.
ELLINGTON, J.
¶ 1 The chief question here is whether the Washington statute providing for judicial enforcement of statutory condominium warranties must yield to the federal arbitration statute, solely because some construction materials came from outside Washington state. We hold that under the circumstances here, the commerce clause does not reach so far, and the state statute controls.

BACKGROUND
¶ 2 Satomi, LLC (the Company) developed the Satomi Condominium, an 85-unit complex located in Bellevue. In 2005, the Satomi Owners Association (the Association) filed suit against the Company alleging numerous construction defects and other deficiencies throughout the complex, and claiming breach of contractual warranties, breach of implied and express warranties under the Washington Condominium Act, chapter 64.34 RCW (WCA), breach of the implied warranty of habitability, and violations of the Consumer Protection Act, chapter 19.86 RCW (CPA).
¶ 3 The Company denied the allegations and demanded arbitration based on the arbitration clause in the warranty addendum, which was an attachment to the original purchase and sale agreements. The Company asserted that most of the building materials used to construct the condominium were manufactured and shipped in interstate commerce, and the Association's claims were therefore subject to arbitration under the Federal Arbitration Act, 9 U.S.C.A. §§ 1-6(FAA).
*463 ¶ 4 The Association moved to quash the demand for arbitration, contending it is not bound by the agreement and that in any event, the agreement violates the judicial enforcement provision of the WCA, which is not preempted by the FAA because the contract does not involve interstate commerce.
¶ 5 The trial court quashed the demand for arbitration motion on three grounds:
(1) The Company did not prove that all of the individual owners agreed to arbitrate.
(2) Even if the individual owners agreed to arbitrate, the Association "is a legally separate corporate entity which is neither a `successor or transferee' to [the Association]. Thus, the arbitration clause is simply inapplicable."[1]
(3) The FAA does not apply because Marina Cove Condominium Owners Ass'n v. Isabella Estates[2] held that condominium sales primarily impact Washington residents.
¶ 6 The Company appeals. Our review is de novo.[3]

DISCUSSION
¶ 7 The Company argues the court erred, and that all unit owners agreed to arbitrate their claims, the Association is bound to arbitrate these issues in the same manner as the unit owners, and the FAA applies and mandates arbitration. We agree with the first two arguments, but not the third.

I. Applicability of Arbitration Agreement to Association
¶ 8 The Association acknowledges that all original owners signed the warranty addendum, but contends that later purchasers are not bound by it. This argument has no merit. The purchase and sale agreement expressly required original unit owners to bind later purchasers to the terms of the addendum. All owners are therefore bound by the agreement to arbitrate.
¶ 9 The Association next contends the agreement has no application here because the Association is a separate legal entity.
¶ 10 The WCA requires condominiums to have a homeowners' association whose membership consists solely of the unit owners, all of whom must belong.[4] Among other powers, a homeowners' association may "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium."[5] An association may act on its own behalf when the proceedings occur "in connection with its own functions and activities."[6] But if an association merely represents its owner/members, its standing is derivative, and it is subject to any defenses and limitations that may be asserted against them and is without a separate right to recover.[7] In other words, "`[i]ts claim . . . is only as good as that of its constituent members.'"[8]
¶ 11 Such is the case here. The claims asserted belong to the individual unit owners. In addition to violations of the CPA, the Association alleges breaches of warranties *464 under the WCA, the purchase contract, and the implied warranty of habitability, resulting in damage to property owned by its members.[9] But the WCA's express and implied warranties run to the unit purchasers, not the Association,[10] the implied warranty of habitability runs from the buildervendor to the original purchaser,[11] the contract warranties do not run to the Association, and private rights of action under the CPA belong only to the individual allegedly deceived in a consumer transaction.[12] Given the nature of the claims here, the Association necessarily brought this action in a representative capacity, not on its own behalf as a separate juristic entity.
¶ 12 The Association stands in the shoes of the individual unit owners. The trial court erred when it concluded the arbitration clause does not apply to the Association. If the claims are subject to arbitration, the Association must arbitrate.
¶ 13 The remaining question is whether statutory warranty claims are subject to arbitration because the Federal Arbitration Act preempts state law.

II. Applicability of The Federal Arbitration Act
¶ 14 The Association contends that we decided this issue in Marina Cove, wherein we held that condominium purchase and sale agreements between Washington companies and Washington residents do not implicate the FAA.[13] But as explained below, we must revisit this issue here.
¶ 15 Washington has a strong policy favoring arbitration of disputes,[14] and any doubts about the scope of arbitrable issues are resolved in favor of arbitration "`whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"[15]
¶ 16 Congress also favors arbitration of disputes, and to that end enacted the Federal Arbitration Act. The FAA's basic purpose is to overcome courts' unwillingness to enforce arbitration agreements.[16] Where it applies, the FAA preempts state law, prohibiting application of state statutes that invalidate arbitration agreements.[17] The FAA provides as follows:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[[18]]
*465 ¶ 17 The United States Supreme Court most recently considered the scope of the FAA in Citizens Bank v. Alafabco, Inc.,[19] which involved debt restructuring arrangements between an Alabama bank and an Alabama construction company. In concluding the transactions were governed by the FAA, the Court described the phrase "involving commerce" as the "functional equivalent of the more familiar term `affecting commerce' words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."[20]
¶ 18 The Court emphasized that the Commerce Clause power "`may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'"[21] Only the general practice subject to federal control need have a substantial effect on interstate commerce.[22]
¶ 19 The Citizens Bank debt restructuring agreements, although executed in Alabama by Alabama residents, easily met the "involving commerce" test for at least three reasons: (1) Alafabco used funds from loans that were the subject of the debt restructuring agreements to finance large projects throughout the southeastern United States; (2) the restructured debt was secured in part by Alafabco's inventory of goods assembled from out-of-state parts and raw materials; and (3) the general practice represented by the transactions at issue, commercial lending, has a broad impact on the national economy and is clearly within Congress' regulatory power.[23]
¶ 20 Citizens Bank confirmed the broad reach of the FAA announced in 1995 in Allied-Bruce Terminix Cos. v. Dobson.[24]Allied-Bruce involved a homeowner's lawsuit against the companies with whom he contracted for termite protection. An Alabama statute disallowed predispute arbitration agreements. Allied-Bruce and Terminix operated in multiple states and "the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the [contract], came from outside Alabama."[25] The United States Supreme Court held that the transaction evidenced by the contract need only "in fact" involve interstate commerce,[26] which the parties did not dispute. Thus, the FAA applied and preempted the state statute.[27]
¶ 21 In another 1995 decision, United States v. Lopez,[28] the Court described the test of Congress' power to regulate as whether the activity sought to be regulated "substantially affects" interstate commerce. This language in Lopez resulted in a number of decisions, including ours in Marina Cove, which came between Lopez and Allied-Bruce in 1995, and Citizens Bank in 2003.
¶ 22 In Marina Cove, we adopted an interpretation of Lopez enunciated in L & L Kempwood Associates, L.P. v. Omega Builders,[29] in which the Texas Court of Appeals held that a contract for repairs to a Texas apartment complex, entered into by an out-of-state property owner and a Texas contractor, was "not a transaction substantially affecting *466 interstate commerce."[30] We applied the same rationale in Marina Cove to hold the FAA did not preempt the WCA:
Similarly here, Marina Cove Condominiums were constructed, marketed, and sold solely within the state of Washington. The contract at issue is a limited warranty offered by a Washington corporation on condominium units located within the state, whose owners all reside in Washington. The only connection to other states involves one buyer, who moved to Washington from another state, and another buyer, who transferred funds from an out-of-state bank account for use as a down payment on one unit purchased. That negligible contact with other states does not constitute a substantial effect on interstate commerce. The FAA does not apply.[[31]]
¶ 23 But in Citizens Bank, the Court rejected the "substantially affecting" interpretation as an "improperly cramped view" of the Commerce Clause power,[32] and held that a significant effect on interstate commerce must be shown only as to the general practice subject to federal control.[33] Given our application of the discredited "substantially affecting interstate commerce" test, Marina Cove's continuing validity is questionable.
¶ 24 We know of only one other case similar to this one, Basura v. U.S. Home Corporation.[34] A California statute permits court actions in construction defect cases, even where the parties have agreed to arbitrate. The California Court of Appeals held the FAA preempted the statute and required arbitration, on grounds that where a subdivision developer utilized out-of-state architects and contractors, engaged in nationwide marketing and advertising using interstate media, and used building materials and equipment manufactured and shipped from multiple states, the purchase agreement involved interstate commerce.[35]
¶ 25 With these authorities in mind, we turn to the claims and facts of this case. The Association's complaint alleges a "variety of construction defects and other deficiencies in building components and/or installation"[36] constituting breaches of common law, statutory, and contractual warranties. The common law warranty is the implied warranty of habitability.[37] The statutory warranties are set forth in RCW 64.34.443,[38] which requires condominium declarants to provide specific implied warranties, and RCW 64.34.445,[39] *467 which permits declarants to make express warranties. The warranty addendum to the purchase and sale agreement[40] set forth express warranties, which appear identical to those implied by the statute:
1. Limited Warranty. The Unit in the Condominium identified above and the Common Elements are suitable for the ordinary uses of real estate of their type and, except as provided below, all parts of the Unit and Common Elements constructed by or for the Declarant are free from defective materials and have been constructed in accordance with applicable law, in accordance with sound engineering and construction standards, and in a workmanlike manner.[[41]]
¶ 26 The warranty addendum purports to require arbitration of all warranty disputes:
7. Seller's Right to Arbitration. At the option of the Seller, Seller may require that any claim asserted by Purchaser or by the Association under this Warranty or any other claimed warranty relating to the Unit or Common Elements must be decided by arbitration, in King County, Washington, under the Construction Arbitration Rules of the American Arbitration Association (AAA) in effect on the date hereof, as modified by this Warranty.[[42]]
¶ 27 Contractual and common law warranties are subject to arbitration. WCA warranties, however, are not: "[A]ny right or obligation declared by this chapter is enforceable by judicial proceeding."[43] The right to a judicial forum for resolution of WCA warranty disputes cannot be waived.[44] The contract warranties are thus arbitrable to the extent they exceed the protections required by RCW 64.34.445, but the statutory right to trial applies to the statutory warranties unless the statute is preempted by the FAA. We must therefore decide whether the purchase and sale transactions involved interstate commerce for purposes of the FAA. We believe they do not, for several reasons.
¶ 28 First, the transaction represented by the contracts here was a garden variety Washington real estate deal. It involved a Washington company and Washington residents. No national marketing occurred, no interstate media were used, no out-of-state architects or contractors were involved.
¶ 29 Second, real property law has historically been the law of each state.[45] The sale of property, including the requirements for and interpretation of purchase agreements, is entirely governed by state law.
¶ 30 Third, the warranties in question arise entirely from state law. Unlike Citizens Bank and Allied-Bruce, where the very subject matter of the contracts involved interstate commerce, here the issues are confined to claims founded in warranties created by the Washington legislature.
¶ 31 Fourth, these transactions have none of the earmarks of an economic activity that in the aggregate would represent a general practice subject to federal control. The Company offers no authority holding that *468 local real estate transactions represent such a practice, or that warranties required by state law for state condominium projects represent such a practice, or that local regulation of real estate transactions can constitute an economic activity that in the aggregate would represent a general practice subject to federal control. The Company relies upon a single fact: that construction materials came from outside Washington state. In some cases, this is adequate for FAA preemption. Here, it is not.
¶ 32 Where the issue is federal regulation of the business itselffor example, enforcement of the rights of employees to nondiscriminatory and healthy workplaces the "transaction" involves the internal operation of the business, and its use of materials shipped in interstate commerce is enough to characterize that business as affecting commerce for purposes of the FAA.[46] In such cases, the question is the applicability of federal regulation to the conduct of the business.
¶ 33 Where the issue is a private dispute, however, the analysis must identify the transaction involving commerce. In Citizens Bank, the Court reasoned that because the Commerce Clause gives Congress "the power to regulate local business establishments purchasing substantial quantities of goods that have moved in interstate commerce," it followed that it also permits regulation of "substantial commercial loan transactions secured by such goods."[47] In Basura v. U.S. Home Corp.,[48] construction materials and appliances came from out of state. In neither case, however, was the presence of interstate materials the only interstate aspect of the case.
¶ 34 Here, the only connection to interstate commerce is that materials from elsewhere were used in construction, and some of those were allegedly unsound or unsuitable, thereby violating the warranty required by RCW 64.34.445 that the condominium be free from defective materials and constructed in accordance with applicable state law. This warranty amounts to a guarantee that the builder has examined the materials used and ensures they are of sound quality and suitable for the use to which they are put, on site, in Washington state. The origin of the materials is irrelevant to the warranty, and the giving of the warranty is not a transaction involving commerce, because in the aggregate or otherwise, it does not represent a general practice subject to federal control. Whether the condominium declarant violated the warranty is not a dispute involving interstate commerce.
¶ 35 It has been often observed that the "affects commerce" test is easily met.[49] But no court has held that the use of materials from other states is, by itself, sufficient to render a private transaction as one "involving interstate commerce." Very few services are rendered and very few products are made using exclusively local materials. While the use of goods shipped in interstate commerce may subject a business to substantive federal regulation, a private contract that is entirely local in subject matter, substantive law, and parties does not acquire an interstate character simply because a refrigerator or a brick was manufactured in another state. The condominium owners purchased real property, not building materials, goods or services. Whatever hold the FAA had or continues to have over the transactions preceding integration of the materials, goods and services into the real estate does not extend to the sale of the real property interest itself.
¶ 36 Here, a significant right created by state law is at issue. The legislature of Washington state retains sovereignty over local real estate transactions. Despite its *469 strong policy favoring arbitration, the legislature created warranty rights in condominium purchasers and provided an exclusively judicial remedy. We do not think this legislative determination as to the appropriate forum for adjudicating legislatively created rights is preempted solely because construction materials may have crossed state lines.
¶ 37 The reach of the Commerce Clause is broad, but it is not unlimited. We hold that WCA statutory warranty claims are not arbitrable, that contract and common law claims are, and remand for further proceedings consistent with this opinion.[50]
APPELWICK, C.J., concur.
AGID, J. (dissenting).
¶ 38 I respectfully dissent from Part II of the majority opinion. Despite recognizing that the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-6, "signals[s] the broadest permissible exercise of Congress' Commerce Clause power" (majority at 465), the strong policy of both state law and the FAA favoring arbitration (majority at 464-65), the purpose of the FAA "to overcome courts' unwillingness to enforce arbitration agreements" (majority at 464), and the "questionable" viability of our decision in Marina Cove Condominium Owners Ass'n v. Isabella Estates,[1] (majority at 466), the majority still tries to rescue the judicial review provision of the Washington Condominium Act (WCA)[2] from federal preemption. Given the interstate nature of condominium sales and the building materials used to construct this condominium, the Warranty Addendum which contains the arbitration clause and covers those very materials evidences a transaction "involving interstate commerce" within the expensive coverage the courts have given the FAA. The FAA thus preempts the Washington Condominium Act's (WCA) judicial resolution provision. I would reverse and allow arbitration under the Warranty Addendum.[3]
¶ 39 There are two major problems with the majority's approach. First, it relies on authority it admits is of questionable continuing validity for one of its major premises: that "[t]he right to a judicial forum for resolution of WAC warranty disputes cannot be waived."[4] And, even if this premise is still an accurate statement of the law, the United States Supreme Court has had no difficulty striking down similar non-waiver provisions in Montana,[5] Alabama,[6] and California[7] when they run afoul of the FAA. Second, the majority does everything it can to localize, encapsulate, and miniaturize the transaction at issue here so it can conclude that the business of building condominiums "does not acquire an interstate character simply because a refrigerator or a brick was manufactured in another state." (Majority at 468). This characterization completely misses the point of the cases the majority so carefully outlines at pages 464-66, of its opinion. In the end, it is left relying on distinctions without differences, "facts" that do not distinguish this *470 case from the letter or the spirit of the Supreme Court's decisions in Allied-Bruce Terminix Cos. v. Dobson[8] and Citizens Bank v. Alafabco, Inc.[9] I would hold that the "general practice"[10] involved here is building condominiums, not executing local real estate contracts or signing warranty addenda. Interstate commerce is clearly implicated by a project on which not one brick or refrigerator but 70 percent of the building components are manufactured, ordered, and shipped from other states.
¶ 40 The FAA provides that
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[[11]]
The party moving to compel arbitration must make a threshold showing that there is a written agreement to arbitrate and that the contract at issue involves interstate commerce.[12]
¶ 41 The Company argues the transactions evidenced by the Warranty Addendum involve interstate commerce because over 70 percent of the building materials used to construct the condominium complex were manufactured in and shipped from outside Washington. The Association asserts the origin of the building materials is too remote an interstate connection for the FAA to apply. It contends this court in Marina Cove established that condominium purchase and sale agreements between Washington companies and Washington residents do not implicate the FAA.[13]
¶ 42 The FAA's basic purpose is to overcome courts' refusals to enforce arbitration agreements.[14] The FAA preempts state law, prohibiting state courts from applying state statutes that invalidate arbitration agreements.[15] The U.S. Supreme Court has interpreted the phrase "involving commerce" to be the
functional equivalent of the more familiar term "affecting commerce"words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"that is, within the flow of interstate commerce.[[16]]
¶ 43 In Allied-Bruce, the Gwins entered into a termite protection contract for their home with Allied-Bruce and Terminix.[17] They sold their home to the Dobsons, who discovered the house was infested with termites and, along with the Gwins, sued Allied-Bruce and Terminix in Alabama state court. Allied-Bruce and Terminix argued the contract's arbitration clause was enforceable under the FAA despite an Alabama statute which, like the one in question here, made written, predispute arbitration agreements unenforceable. The Alabama Supreme Court ruled the FAA did not apply because *471 the connection between the termite contract and interstate commerce was too tenuous considering the parties never "contemplated" substantial interstate activity.[18] The U.S. Supreme Court reversed.
¶ 44 After holding that the words "involving commerce" invoked the full extent of Congress' Commerce Clause powers, the Court disapproved of the "`contemplation of the parties'" test and held the transaction evidenced by the contract need only "in fact" involve interstate commerce.[19] The parties did not contest that the transaction involved interstate commerce. Allied-Bruce and Terminix operated in multiple states and "the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the [contract], came from outside Alabama."[20] Thus, the FAA applied.[21]
¶ 45 In Basura v. U.S. Home Corp., homeowners brought suit against a developer for alleged design and construction defects, and the developer moved to compel arbitration based on the arbitration clause in the sale agreements.[22] The California Court of Appeals ruled that United States v. Lopez[23] did not change Allied-Bruce's broad interpretation of the FAA's coverage. It then held that the "indicia of interstate commerce are far greater" than in Allied-Bruce because constructing the homes involved using building materials and equipment manufactured and shipped from states all over the country.[24] The court also noted that the developer had contracted with out-of-state architects, trade contractors, and sub-contractors, and engaged in marketing and advertising throughout the country using interstate media.
¶ 46 In Citizens Bank,[25] the U.S. Supreme Court reaffirmed its holding in Allied-Bruce and rejected the proposition that Lopez had narrowed that ruling. An Alabama bank had entered into debt-restructuring arrangements with an Alabama construction company, and each arrangement included an arbitration clause. The company brought suit against the bank alleging several claims, and the bank moved to compel arbitration under the FAA. The Alabama Supreme Court again held there was an insufficient nexus with interstate commerce to invoke the FAA. The U.S. Supreme Court again reversed.
¶ 47 The Court reiterated that Congress' Commerce Clause power "`may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'"[26] It held that only the general practice need have a substantial effect on interstate commerce.[27] The Court held the debt-restructuring agreements, although executed in Alabama by Alabama residents, easily passed the FAA's "involving commerce" test for at least three reasons: (1) Alafabco financed projects throughout the southeastern United States using loans that were the subject of the debt-restructuring agreements; (2) the restructured debt was secured in part by Alafabco's inventory of goods assembled from out-of-state materials; and (3) the general practice represented by the transactions at issue, commercial lending, had a broad impact on *472 the national economy and was clearly within Congress' regulatory power.[28] The Court stated the Alabama Supreme Court's decision "adheres to an improperly cramped view of Congress' Commerce Clause power. . . . Lopez did not restrict the reach of the FAA or implicitly overrule Allied-Bruce Terminix Cos.indeed, we did not discuss that case in Lopez."[29]
¶ 48 If there was any question about whether the far-reaching "involving interstate commerce" test in Allied-Bruce remained valid, Citizens Bank answered that question in the affirmative. I agree with the majority that our decision in Marina Cove is no longer viable. And, as this case and Basura highlight, this is especially true because in Marina Cove we did not consider whether the manufacture and movement of the building materials in interstate commerce triggers a transaction involving interstate commerce under the FAA.
¶ 49 Here, the Warranty Addendum containing the arbitration clause evidences a transaction "involving interstate commerce" within the U.S. Supreme Court's expansive interpretation of the FAA. The Addendum states in part:
The Unit in the Condominium identified above and the Common Elements are suitable for the ordinary uses of real estate of their type and, except as provided below, all parts of the Unit and Common Elements constructed by or for the Declarant are free from defective materials and have been constructed in accordance with applicable law, in accordance with sound engineering and construction standards, and in a workmanlike manner.[[30]]
As the Association points out, the Warranty Addendum evidences an agreement between a Washington company and primarily Washington-resident purchasers about warranties on condominiums located within Washington. But the Addendum also specifically addresses the materials used to construct the condominium complex, most of which were manufactured and shipped from outside Washington. Basura and Citizens Bank give this interstate materials connection significant weight in determining whether the FAA applies. Most importantly, the general practice represented by the transactions at issue, condominium warranties and sales, has an undeniably broad impact on the national economy.[31]
¶ 50 That the parties to the Warranty Addendum and the location of the condominium complex are local does not resolve the question whether the transaction involves interstate commerce. While the Addendum may not have as significant an overall interstate nexus as the debt-restructuring agreements in Citizens Bank or the sale agreements in Basura, this has not been the focus of the Supreme Court's decisions in Allied-Bruce and Citizens Bank. The interstate nature of the building materials and the "general practice" of condominium construction and sales is enough to evidence a transaction "involving interstate commerce," given the broad interpretation we must now give that phrase under the cases interpreting the FAA. In this *473 connection, it is important to note that the same out-of-state building materials which implicate interstate commerce are the focus of the Association's claims.[32]
¶ 51 The majority characterizes this as a "private dispute" to which the FAA does not apply and the warranty as the "general practice" to which we must look under Citizens Bank. (Majority at 468). The first characterization begs the question and the second is an attempt to miniaturize the transactions at issue to shield them from interstate significance. All the disputes discussed in Allied-Bruce, Basura and Citizens Bank were "private." Yet the courts held the FAA applied to them all because, when viewed through the lens of interstate commerce and the purpose of the FAA, all were a part of broader "aggregate economic activity," i.e., pest control using out-of-state products, home building, and loans. Similarly, each of those transactions could have been reduced to its lowest common denominator had the courts wished to ignore the "general practice" of which it was a part. But the U.S. Supreme Court made it very clear when it repudiated the Lopez approach in Citizens Bank that we may not compartmentalize transactions to avoid the strong federal mandate in favor of arbitration.
¶ 52 Finally, the majority seeks to down-play the significance of the out-of-state materials at issue in this dispute. (Majority at 468). If anything, the connection this condominium project has to interstate commerce is far greater than in Allied-Bruce. If any contract would seem to be remote from the reach of the Commerce Clause, it is one between a homeowner and his local Terminex outlet to spray for bugs. Yet the Supreme Court found FAA preemption based solely on Allied-Bruce's multistate operations and the fact that a single commoditythe bug spraywas manufactured in another state. Here, virtually all the materials at issue come from another State. This, too, is a contract that "in fact" involved interstate commerce.[33]
¶ 53 I agree with the majority that "a significant right created by state law is at issue." (Majority at 468-69). But so were the similar laws invalidated in Allied-Bruce, Basura, and Citizens Bank. I simply do not think we can ignore the very clear mandate of the U.S. Supreme Court that, where a contract involves a general practice that has a substantial effect on interstate commerce, state laws limiting or prohibiting arbitration must yield to the Federal Arbitration Act.
NOTES
[1] Clerk's Papers at 144.
[2] 109 Wash.App. 230, 34 P.3d 870 (2001).
[3] Walters v. A.A.A. Waterproofing, 120 Wash.App. 354, 357, 85 P.3d 389 (2004).
[4] RCW 64.34.300.
[5] RCW 64.34.304(1)(d).
[6] 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 12.5, at 40 (2d ed.2004) (citing RCWA 64.34.304(1)(d)).
[7] Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 413-14, 745 P.2d 1284 (1987) (under previous version of WCA, homeowners' association was not separate juristic entity, and claims were brought in representative capacity for individual homeowners whose rights were at issue); see also Klay v. Pacificare Health Sys., Inc., 389 F.3d 1191, 1202-03 (11th Cir. 2004) ("associations suing in a representative capacity are bound by the same limitations and obligations as their members"); Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp., 152 Vt. 16, 565 A.2d 238, 241 (1989).
[8] Meadowbrook Condo. Ass'n, 565 A.2d at 241 (quoting trial court).
[9] Common elements are all of the portions of a condominium other than the units. RCW 64.34.020(6). Limited common elements are portions of the common elements reserved for the exclusive use of one or more but fewer than all of the units. RCW 64.34.020(22). The individual unit owners own the common elements and the limited common elements. See RCW 64.34.204(2), (4), .224(1), .228(1).
[10] See RCW 64.34.443(1) ("Express warranties made by any seller to a purchaser of a unit, if relied upon by the purchaser, are created as follows. . . ."); RCW 64.34.445(6) ("Any conveyance of a unit transfers to the purchaser all of the declarant's implied warranties of quality.").
[11] Stuart, 109 Wash.2d at 416, 745 P.2d 1284.
[12] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 792-93, 719 P.2d 531 (1986) (only a person injured in his business or property may bring a private action under the CPA).
[13] Marina Cove, 109 Wash.App. at 244, 34 P.3d 870.
[14] Zuver v. Airtouch Commc'ns, Inc., 153 Wash.2d 293, 301 n. 2, 103 P.3d 753 (2004).
[15] Kamaya Co., Ltd. v. American Prop. Consultants, Ltd., 91 Wash.App. 703, 714, 959 P.2d 1140 (1998) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
[16] Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
[17] Id. at 272, 115 S.Ct. 834.
[18] 9 U.S.C.A. § 2 (emphasis added).
[19] 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003).
[20] Id. at 56, 123 S.Ct. 2037.
[21] Id. at 56-57, 123 S.Ct. 2037 (quoting Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)) (emphasis added).
[22] Id. at 57, 123 S.Ct. 2037.
[23] Id. at 57-58, 123 S.Ct. 2037.
[24] 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
[25] Id. at 282, 115 S.Ct. 834.
[26] Id. at 279-80, 115 S.Ct. 834.
[27] Id.
[28] 514 U.S. 549, 559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).
[29] 972 S.W.2d 819, 822 (Tex.App.Corpus Christi 1998). The Texas Supreme Court reversed, using the same rationale later applied in Citizens Bank. L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.), 9 S.W.3d 125 (Tex.1999).
[30] Marina Cove, 109 Wash.App. at 244, 34 P.3d 870.
[31] Id.
[32] Citizens Bank, 539 U.S. at 58, 123 S.Ct. 2037.
[33] Id. at 57, 123 S.Ct. 2037.
[34] 98 Cal.App.4th 1205, 120 Cal.Rptr.2d 328 (2002).
[35] Id. at 1214, 120 Cal.Rptr.2d 328.
[36] Clerk's Papers at 4.
[37] Brickler v. Myers Constr., Inc., 92 Wash.App. 269, 275, 966 P.2d 335 (1998).
[38] RCW 64.34.443(1) specifies that the formal words "warranty" or "guarantee" are not needed to create an express warranty, which arise from any one of the following:

"(a) Any written affirmation of fact or promise which relates to the unit, its use, or rights appurtenant thereto, area improvements to the condominium that would directly benefit the unit, or the right to use or have the benefit of facilities not located in the condominium creates an express warranty that the unit and related rights and uses will conform to the affirmation or promise;
"(b) Any model or written description of the physical characteristics of the condominium at the time the purchase agreement is executed, including plans and specifications of or for improvements, creates an express warranty that the condominium will conform to the model or description except pursuant to RCW 64.34.410(1)(v);
"(c) Any written description of the quantity or extent of the real property comprising the condominium, including plats or surveys, creates an express warranty that the condominium will conform to the description, subject to customary tolerances; and
"(d) A written provision that a buyer may put a unit only to a specified use is an express warranty that the specified use is lawful."
[39] RCW 64.34.445 provides in pertinent part:

"(1) A declarant and any dealer warrants that a unit will be in at least as good condition at the earlier of the time of the conveyance or delivery of possession as it was at the time of contracting, reasonable wear and tear and damage by casualty or condemnation excepted.
"(2) A declarant and any dealer impliedly warrants that a unit and the common elements in the condominium are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by such declarant or dealer will be:
"(a) Free from defective materials;
"(b) Constructed in accordance with sound engineering and construction standards;
"(c) Constructed in a workmanlike manner; and
"(d) Constructed in compliance with all laws then applicable to such improvements."
[40] The Association's complaint alleges the creation of express warranties by public offering statement, advertising materials, advertising statements, and samples. See Clerk's Papers at 6. But the warranty addendum limited the warranties to those in the contract. See Clerk's Papers at 171, 197.
[41] Clerk's Papers at 193.
[42] Clerk's Papers at 196 (emphasis added).
[43] RCW 64.34.100(2).
[44] Marina Cove, 109 Wash.App. at 236-37, 34 P.3d 870 (RCW 64.34.100(2) creates a right to judicial enforcement of the WCA that may not be waived).
[45] In addition to an ages-old common law, the state thoroughly regulates real estate law in areas including broker licensing, chapters 18.85.86 RCW, real estate sale financing, chapters 61.12, .30 RCW, sale and transfer procedures, chapters 64.04-.06 RCW, taxation, Title 84 RCW, and eminent domain, Title 8 RCW.
[46] See Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (Civil Rights Act); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (Civil Rights Act); Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969) (Civil Rights Act); EEOC v. Ratliff, 906 F.2d 1314 (9th Cir.1990) (Title VII); Usery v. Lacy, 628 F.2d 1226 (9th Cir.1980) (OSHA).
[47] Citizens Bank, 539 U.S. at 57, 123 S.Ct. 2037.
[48] 98 Cal.App.4th 1205, 120 Cal.Rptr.2d 328 (2d Dist.2002).
[49] See, e.g., Ratliff, 906 F.2d at 1316.
[50] The parties recently advised the court that Satomi Owners Association and the Company have settled. The Association seeks to terminate review, which the Company resists. In addition, proposed amici Master Builders and Blakeley Village, LLC have filed briefs opposing termination of review. We agree with the Company that the issues here will recur and should be determined, and we hereby deny the motion to terminate review. (Judge Susan Agid took no part in the determinations required by these motions.)
[1] 109 Wash.App. 230, 34 P.3d 870 (2001).
[2] RCW 64.34.100(2) (right of action); .030 (nonwaiver provision).
[3] As the majority recognizes (majority at 468-69), even if the FAA did not preempt the WCA remedy here, the arbitration clause still applies to the Association's implied warranty of habitability and Consumer Protection Act claims. It would clearly promote judicial economy to resolve these claims, which arise from identical facts, in one arbitration hearing.
[4] Majority at 467 (citing Marina Cove, 109 Wash. App. at 236-37, 34 P.3d 870).
[5] Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 683, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).
[6] Allied-Bruce Terminex Cos. v. Dobson, 513 U.S. 265, 269, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
[7] Basura v. U.S. Home Corp., 98 Cal.App.4th 1205, 1212, 120 Cal.Rptr.2d 328, review denied, 2002 Cal. Lexis 6245 (2002).
[8] 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
[9] 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003).
[10] Id. at 57, 123 S.Ct. 2037.
[11] 9 U.S.C.A. § 2 (emphasis added).
[12] Walters v. A.A.A. Waterproofing, Inc., 120 Wash.App. 354, 358, 85 P.3d 389 (2004) (citing Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 978 n. 4 (4th Cir.1985)).
[13] 109 Wash.App. 230, 34 P.3d 870.
[14] Allied-Bruce, 513 U.S. at 270, 115 S.Ct. 834.
[15] Id. at 272, 115 S.Ct. 834 (citing Southland Corp. v. Keating, 465 U.S. 1, 15-16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).
[16] Citizens Bank, 539 U.S. at 56, 123 S.Ct. 2037 (internal quotations and citations omitted).
[17] 513 U.S. 265, 115 S.Ct. 834.
[18] Id. at 269, 115 S.Ct. 834.
[19] Id. at 279-80, 115 S.Ct. 834.
[20] Id. at 282, 115 S.Ct. 834.
[21] Id.
[22] 98 Cal.App.4th 1205, 120 Cal.Rptr.2d 328, review denied, 2002 Cal. LEXIS 6245 (2002).
[23] 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). This is the case we erroneously relied on in Marina Cove to narrow the test for applying the FAA. 109 Wash.App. at 243, 34 P.3d 870.
[24] Basura, 98 Cal.App.4th at 1214, 120 Cal. Rptr.2d 328.
[25] 539 U.S. 52, 123 S.Ct. 2037.
[26] Id. at 56-57, 123 S.Ct. 2037 (alteration in original) (quoting Mandeville Island Farms v. Am. Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)).
[27] Id. (citing Maryland v. Wirtz, 392 U.S. 183, 196-97 n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), overruled on other grounds, Nat'l League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37-38, 57 S.Ct. 615, 81 L.Ed. 893 (1937)).
[28] Id. at 57-58, 123 S.Ct. 2037.
[29] Id. at 58, 123 S.Ct. 2037. Notably, the Texas Supreme Court had earlier used the same reasoning, that Lopez did not affect Allied-Bruce, in granting mandamus relief and essentially overruling the Texas Court of Appeals' decision in Kempwood Associates, which we had relied on in Marina Cove. See In re L & L Kempwood Assocs., L.P., 9 S.W.3d 125 (Tex.1999). Although the only interstate feature of that contract was that the parties lived in different states, the court ruled the contract still involved interstate commerce, so the FAA applied. Id. at 127.
[30] (Emphasis added.)
[31] "[E]ven when a transaction is entered into between residents of the same state and consummated in that state, the transaction implicates the FAA when `in the aggregate the economic activity in question' represents a `general practice subject to federal control.'" Legacy Wireless Servs., Inc. v. Human Capital, L.L.C., 314 F.Supp.2d 1045, 1052 (D.Or.2004) (quoting Citizens Bank, 539 U.S. at 57, 123 S.Ct. 2037). The parties disagree about whether the "general practice" represented by the transactions at issue is condominium sales or the more specific practice of warranties in condominium sales. But both transactions are integral parts of the same general practicehousing constructionwhich is a multibillion dollar business that obviously affects interstate commerce when the materials are manufactured and shipped from state to state.
[32] The Association's complaint alleged causes of action based on a "variety of construction defects and other deficiencies in building components and/or installation including, but not limited to, siding and trim, sealant joints, building paper, flashing, penetration wraps, concrete entry patios and walkways, parapet guardrails on walkways, columns, shear walls, windows and concrete slabs on grade."
[33] Allied-Bruce, 513 U.S. at 279-80, 115 S.Ct. 834.