Opinion issued January 29, 2009 

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00240-CV






STANFORD DEVELOPMENT CORPORATION, Appellant


V.


STANFORD CONDOMINIUM OWNERS ASSOCIATION, Appellee






On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 2007-50115










NO. 01-08-00386-CV






IN RE STANFORD DEVELOPMENT CORPORATION, Relator






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N



 The issue in this interlocutory appeal (1) is whether a condominium homeowners'
association that brings suit against the condominium developer on behalf of its
homeowners is bound by arbitration agreements in earnest money contracts between
the developer and the individual homeowners. We also consider whether (1)
subsequent purchasers are bound by the arbitration agreements in their predecessors'
earnest money contracts, and (2) the arbitration agreements in the earnest money
contracts were merged into the subsequent deeds. We reverse and remand.

BACKGROUND

 This cases arises out of a construction-defect lawsuit brought by the Stanford
Condominium Owners Association ("the Association") against Stanford Development
Corporation ("Stanford"), the builder and developer of the condominium complex. 
The Association filed suit against Stanford alleging breach of contract, Deceptive
Trade Practices, breach of warranty, fraud, and negligent design, construction, and
supervision. Stanford moved to compel arbitration based on arbitration clauses in 27
of the 37 homeowners' earnest money contracts, which provide as follows:

 All claims for breach of this Contract or otherwise are limited solely to
the specific remedies provide for herein. Buyer and Seller hereby
further agree that any controversy, claim or dispute arising out of or
relating to (a) the Contract, (b) any breach thereof, (c) the sales
transaction reflected in the Contract, (d) the construction of the
residence which is the subject of the Contract and/or (e) any
representations or warranties, express or implied, relating to the
Property and the Unit, shall be decided by binding arbitration in
accordance with the Construction Industry Arbitration Rules of the
American Arbitration Association. All decisions by the arbitrators
shall be final, and any judgment upon the award rendered by the
arbitrators may be confirmed, entered and enforced in any court having
proper jurisdiction. Any action, regardless of form, arising out of the
transactions under this Contract must be brought by Buyer within two
(2) years of the Closing Date, regardless of when the cause of action
accrues or discovery of a claim by Buyer. (Emphasis added).


 After a hearing on Stanford's motion to compel arbitration, the trial court
denied Stanford's motion, and this appeal followed.

PROPRIETY OF DENIAL OF MOTION TO COMPEL ARBITRATION


 On appeal, Stanford contends the trial court erred in denying its motion to
compel arbitration. Specifically, Stanford contends that the trial court erroneously
concluded that the Association was not bound by the arbitration clauses in the
individual homeowners' contracts.

Standard of Review and Applicable Law

 Denial of a motion to compel arbitration generally triggers the abuse-of-discretion standard of review. See In re D. Wilson Constr. Co., 196 S.W.3d 774, 780
(Tex. 2006). A trial court abuses its discretion when it acts arbitrarily or
unreasonable and without reference to any guiding rules or principles. See In re
Bruce Terminix Co., 988 S.W.2d 702, 705 (Tex. 1998); Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992). Because a trial court has no discretion in determining what the
law is, which law governs, or how to apply the law, we review this category of
discretionary rulings de novo. See In re D. Wilson Constr. Co., 196 S.W.3d at 781. 
 However, when the ruling under review results from the trial court's having resolved
underlying facts, we must defer to the trial court's factual resolutions and any
credibility determinations that may have affected those resolutions, and we may not
substitute our judgment for that of the trial court. See Walker, 827 S.W.2d at 839-40.

 A party seeking to compel arbitration must establish (1) the existence of a
valid, enforceable arbitration agreement and (2) that the claims asserted fall within
the scope of that agreement. Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d
576, 581 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (applying Texas General
Arbitration Act). Because state and federal policies favor arbitration, a presumption
exists favoring agreements to arbitrate, and courts must resolve any doubts about an
arbitration agreement's scope in favor of arbitration. Cf. In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 753 (Tex. 2001) (discussing arbitration under the FAA).

Are arbitration clauses in homeowners' contracts binding on the Association?

 When determining the existence of a valid enforceable arbitration agreement,
we also consider gateway matters such as whether a valid arbitration clause exists and
whether an arbitration clause is binding on a nonparty. In re Weekley Homes, L.P.,
180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Courts may not order parties
to arbitrate unless they have agreed to do so. Belmont Constructors, Inc. v. Lyondell
Petrochem. Co., 896 S.W.2d 352, 356-57 (Tex. App.--Houston [1st Dist.] 1995, no
writ [appeal and orig. proceeding] ). Consequently, despite a presumption favoring
arbitration, a valid agreement to arbitrate remains a threshold requirement. See In re
Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding).

 It is undisputed that there is an arbitration agreement between Stanford and 27
of the individual homeowners. The issue is whether the arbitration agreements can
be enforced against the Association, a nonsignatory to the agreements. Courts have
recognized six theories that may bind nonsignatories to arbitration agreements: (1)
incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable
estoppel, and (6) third-party beneficiary. Kellogg Brown & Root, 166 S.W.3d at 739.

 Stanford argues that the fifth theory for binding nonsignatories--equitable
estoppel--applies in this case. Specifically, Stanford argues that because the
Association has filed suit based, in part, on the contractual terms found in the
homeowners' earnest money contracts, it is estopped from denying the applicability
of the arbitration provision in the same contract. We agree.

 The supreme court has held that "a litigant who sues based on a contract
subjects him or herself to the contract's terms." In re FirstMerit Bank, N.A., 52
S.W.3d at 755-56. When the nonsignatory asserts claims identical to the signatories'
contract claims, all must be arbitrated. Id. Additionally, claims must be brought on
the contract and arbitrated if liability arises solely from the contract or must be
determined by reference to it. In re Weekley Homes, L.P., 180 S.W.3d at 132. If a
nonsignatory pursues a claim based "on the contract" of another, and the contract
contains an arbitration clause, then the nonsignatory must pursue all claims--tort and
contract--in arbitration. Id.

 In this case, the Association alleged in its petition that Stanford "failed to
comply with the express and implied contractual duties which they owed to [the
Association's] Owners. [Stanford] breached [its] contracts." The only contracts
giving rise to any express or implied contractual duties in this case are the earnest
money contracts between Stanford and the individual homeowners. The Association
also alleged that Stanford breached "express and/or implied warranties." The only
express warranties are contained in the individual homeowners' earnest money
contracts. Because the Association has filed suit seeking the benefits of the earnest
money contracts, it cannot deny the applicability of the arbitration agreements in the
same contracts. See FirstMerit Bank, 52 S.W.3d at 755; Weekley Homes, 180 S.W.3d
at 134-35. As stated by the supreme court, "A nonparty cannot both have his contract
and defeat it too." Weekley Homes, 180 S.W.3d at 135.

 In addition to the claims based directly "on the contracts" of the individual
homeowners, the Association also included DTPA claims, fraud, and intentional or
negligent misrepresentation claims, and negligent design, construction, and
supervision claims. However, because the Association chose to allege contract claims
that are subject to arbitration clauses, and because the arbitation clauses in this case
are broad enough to cover both contract and tort claims, the Association must also
arbitrate the intertwined tort claims. See Weekley Homes, 180 S.W.3d at 132 (citing 
Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992)). Therefore, we
conclude that equitable estoppel doctrine prevents the Association from denying the
applicability of the arbitration clauses found in its homeowners' earnest money
contracts.

 We also conclude that because the Association is suing "on behalf of" the
individual condominium owners, it stands in their shoes and is also bound by any
arbitration provisions that bind them. Section 82.102(4) of the Uniform
Condominium Act provides that a "unit Owners' Association" may "institute, defend,
intervene in, settle, or compromise litigation or administrative proceedings in its own
name on behalf of itself or two or more unit owners on matters affecting the
condominium." Tex. Prop. Code Ann. § 82.102(4) (Vernon 2007). It its petition,
the Association invokes its authority to bring suit under chapters 81 & 82 of the
Condominium Act and alleges that "[t]he claims which [the Association] makes
hereinafter on behalf of the unit owners is limited to the common areas and elements
for which [the Association] has management responsibility under the condominium
declarations and under law." (Emphasis added). The Association purchased nothing
from Stanford and serves only to represent the interests of the individual
homeowners.

 This Court considered an analogous situation in the case of In re Jindal Saw
Ltd., 264 S.W.3d 755 (Tex. App.--Houston [1st Dist.], orig. proceeding). In Jindal
Saw, the decedant, who was killed on the job, had signed an arbitration agreement
with his employer. Id. at 758. After his death, the decedent's wife brought a survival
action in her capacity as representative of his estate. Id. at 759-60. The wife, in her
individual capacity and as next friend for her children, also brought wrongful death
actions. Id. This Court held that the wife was bound to arbitrate the survival action
brought on behalf of the estate because by binding himself to arbitration, the decedent
also bound his estate and claims brought on its behalf by the personal representative. 
Id. at 766. The wife was not, however, bound to arbitrate the wrongful death actions
because those claims were never owned by the decedent or his estate, and he could
not have bound the owner of those claims to arbitrate. Id. at 764-65.

 By analogy, in this case, the individual owners bound themselves to arbitrate
their claims with Stanford. Thus, the Association, when suing on the owners' behalf,
is also bound to arbitrate, just as the wife, in Jindal Saw, when suing as personal
representative of the decedents's estate, was bound to arbitrate claims brought on
behalf of the estate.

 Another jurisdiction has considered the issue more directly. In Satomi Owners
Ass'n. v. Satomi, LLC, 159 P.3d 460 (Wash. Ct. App.), a condominium homeowners
association filed suit against the condominium developer, alleging numerous
construction defects. Id. at 462. The allegations included breach of express and
implied warranties and violations of the Washington consumer protection act. Id. 
The developer moved to compel arbitration pursuant to a warranty addendum that was
attached to each purchaser's original purchase and sales agreement, which relief the
trial court denied. Id. The court of appeals held that "[i]f an association merely
represents its owners/members, its standing is derivative, and it is subject to any
defenses and limitations that may be asserted against them and is without a separate
right to recover." Because the association brought the action "in a representative
capacity, not on its own behalf as a separate juristic entity," it was bound by the
arbitration provisions of its constituent members. Id. at 463.

 We agree with the Satomi court. The Association's pleading clearly alleges
that it is bringing suit on behalf of its constituent owners. The Association does not
own the property that is the subject of the dispute. Each individual homeowner owns
an undivided interest in the common areas that are the subject of this dispute. 
Although the Association has standing to bring the suit, its rights are limited to those
possessed by the people it represents. Because the homeowners are bound by
arbitration agreements, and the Association has sued on their behalf, it, too, is bound
by the agreements.

Are subsequent purchasers bound by arbitration clauses?

 At the hearing on the motion to compel, the Association also argued that some
of the original homeowners had already sold their condominiums to subsequent
purchasers who did not sign the arbitration agreements. Thus, we must also
determine whether these subsequent purchasers, even though nonsignatories to
earnest money contracts containing the arbitration provisions, are nonetheless
required to arbitrate. We hold that they are.

 By filing suit based on obligations set forth in the earnest money contracts, the
subsequent purchasers are seeking to obtain the benefits of those contracts. Thus, the
equitable estoppel principles discussed above should apply to them also. See
FirstMerit Bank, 52 S.W.3d at 755-56 (holding nonsignatory donees of mobile home
bound by arbitration clause found in donors' purchase contract because donees filed
suit based on contract).

 The case of Phan v. Addison Spectrum, LP, 244 S.W.3d 892 (Tex.
App--Dallas 2008, no pet.) considered an analogous situation. In Phan, the
homeowners' association filed suit and settled a claim on behalf of its unit owners. 
Id. at 896. One homeowner, Phan, argued that the association did not have standing
to settle her individual claims. Id. at 897. The court held that, "by virtue of her
ownership of her unit, Phan is a member of [the association], and "[u]nder Texas
Property Code § 82.102, she therefore consented to allow [the association] to bring
and settle the ACA suit in its own name and on her behalf. Id. Phan, thus, stands for
the proposition that individual homeowners are bound by the consequences of a suit
that was brought by their homeowners' association on their behalf and to which they
have consented by virtue of their membership in the association

 The subsequent purchasers in this case, by virtue of their membership in the
Association, have consented to allow the Association to bring the present suit on their
behalf. Because the present suit is based on the initial purchasers' earnest money
contracts, the association and all owners who, by virtue of their membership in the
association have consented to allow it to sue on their behalf, are bound by the terms
of those earnest money contracts, including the arbitration provisions.

Did subsequent deeds extinguish arbitration clauses in earnest money contracts?

 At the hearing on the motion to compel arbitration, the trial court expressed
some reservations that perhaps the "[earnest money] contract has been ultimately
supplanted by deeds and all those kinds of things . . . ." Thus, we must address
whether the subsequent deeds extinguished the arbitration provisions that were in the
earnest money contracts. Stanford argues that the arbitration agreement is a collateral
agreement and that it continues to exist even after deeds for the property were
transferred.

 As a general rule, a deed made in full execution of a contract of sale of land
merges the provisions of the contract. Harris v. Rowe, 593 S.W.2d 303, 306-07 (Tex.
1979). However, the merger doctrine does not apply to a deed that constitutes only
partial performance of the preceding contract. Id. The deed does not merge other
distinct and unperformed provisions of the contract. Id. A contract for the sale of
land that creates rights collateral to and independent of the conveyance, such as
completion of construction or escrow agreements pending construction, survives a
deed that is silent with respect to the construction or escrow agreement. Id.

 In Pleasant Grove Builders, Inc. v. Phillips, the buyer purchased a home from
the seller. 355 S.W.2d 818, 819 (Tex. Civ. App.--Dallas 1962, writ ref'd n.r.e.). The
purchase agreement contained a promise by the seller to provide a title insurance
policy. Id. at 823. On appeal, the seller argued that the buyer could not recover
damages based on the seller's failure to provide title insurance because that provision
of the purchase agreement merged with the subsequently-issued deed, which was
silent on the issue. Id. The court of appeals held that "the agreement to furnish a title
policy must be considered as a separate agreement, not superseded by the deed and
properly not included in the deed." Id.

 In Head v. Finley, the buyer purchased a house from the seller. No. 2-03-296-CV, 2004 WL 1699895 (Tex. App--Fort Worth, pet. denied). The earnest money
contract between the two provided that, in the event of a dispute between the parties
arising out of the earnest money contract, the prevailing party in the dispute would
be entitled to recover attorneys' fees. Id. at *7. On appeal, the buyer argued that the
earnest money contract was extinguished by the merger doctrine when the deed to the
property was delivered. Id. The court of appeals, citing Harris v. Rowe and Pleasant
Grove Builders, Inc. v. Phillips, held that the merger doctrine did not apply and that
the attorneys' fee provision of the earnest money contract survived. Id.

 Again, another jurisdiction has considered the issue more directly. In Drees
Co. v. Osburg, 144 S.W.3d 831, 832 (Ky. Ct. App. 2003), the buyers contracted for
the construction and purchase of a new home. Id. at 832. The purchase agreement
had an arbitration clause, but the deed that followed did not. Id. The seller moved
for arbitration based on the arbitration clause in the purchase agreement, but the trial
court denied the motion. Id. On appeal, the court reversed, holding that the merger
doctrine did not apply to collateral agreements, and that the arbitration agreement was
such a collateral agreement. Id. at 833. 

 Based on these authorities, we conclude that the doctrine of merger is not
applicable in this case. The earnest money contracts in this case contained
agreements that created rights collateral to and independent of the conveyance. For
example, the earnest money contracts in this case, like the earnest money contract in
Pleasant Grove Builders, Inc. v. Phillips, contained a promise by the seller to provide
a title policy. Also, the earnest money contracts in this case, like the earnest money
contract in Head v. Finley, contained an attorneys' fee provision. The arbitration
provision, like the provisions mentioned above, created rights independent of the
conveyance, and, as such, were not merged out of existence by the subsequent deeds. (2)

CONCLUSION


 Having determined that the Association and its members are bound by the
arbitration clauses, which were not merged away by the issuance of the subsequent
deeds, we hold that the trial court erred in denying Stanford's motion to compel
arbitration.

 Accordingly, we sustain Stanford's issues on appeal and reverse and remand
for further proceedings.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Higley and Nuchia. (3)
1. 
 
 §§ - §§ - 
 
 
 - 
 - 
 
 § 
 
 ' 
 
" ' 
' " 
 " 
 
 " 
 
 " 
 
 
 
 " 
 "
2. 
 
 
 
 
 
 
3.