**STANFORD DEVELOPMENT CORPORATION,**
Appellant,

v.

**STANFORD CONDOMINIUM OWNERS ASSOCIATION,**
Appellee.

**In re Stanford Development Corporation, Relator.**

Nos. 01–08–00240–CV, 01–08–00386–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 2009.

**46**

Matthew E. Coveler, Hogan & Hogan, L.L.P., Houston, TX, for Appellant.

David D. Peden, Timothy C. Ross, Porter & Hedges, L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and NUCHIA.*

## OPINION

SHERRY RADACK, Chief Justice.

The issue in this interlocutory appeal[1] is whether a condominium homeowners' asso-

---

* Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009, continues to sit by assignment for the disposi-

tion of this case, which was submitted on December 16, 2008.

1. The trial court did not expressly determine whether the Texas General Arbitration Act

ciation that brings suit against the condominium developer on behalf of its homeowners is bound by arbitration agreements in earnest money contracts between the developer and the individual homeowners. We also consider whether (1) subsequent purchasers are bound by the arbitration agreements in their predecessors' earnest money contracts, and (2) the arbitration agreements in the earnest money contracts were merged into the subsequent deeds. We reverse and remand.

## BACKGROUND

This cases arises out of a construction-defect lawsuit brought by the Stanford Condominium Owners Association ("the Association") against Stanford Development Corporation ("Stanford"), the builder and developer of the condominium complex. The Association filed suit against Stanford alleging breach of contract, Deceptive Trade Practices, breach of warranty, fraud, and negligent design, construction, and supervision. Stanford moved to compel arbitration based on arbitration clauses in 27 of the 37 homeowners' earnest money contracts, which provide as follows:

All claims for breach of this Contract or otherwise are limited solely to the specific remedies provide for herein. *Buyer and Seller hereby further agree that any controversy, claim or dispute arising out of or relating to (a) the Contract, (b) any breach thereof, (c) the sales transaction reflected in the Contract, (d) the construction of the residence which is the subject of the Contract and/or (e) any representations or warranties, express or implied, relating to the Property and the Unit, shall be decided by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.* All decisions by the arbitrators shall be final, and any judgment upon the award rendered by the arbitrators may be confirmed, entered and enforced in any court having proper jurisdiction. Any action, regardless of form, arising out of the transactions under this Contract must be brought by Buyer within two (2) years of the Closing Date, regardless of

---

(TAA) or the Federal Arbitration Act (FAA) applied. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–.098 (Vernon 2005); 9 U.S.C. §§ 1–16 (2001). The method of review depends on which act applies. Mandamus is appropriate to review an order denying arbitration when the FAA applies to the arbitration agreement. *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex.1998); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271–273 (Tex.1992). Interlocutory appeal is appropriate to review an order denying arbitration when the TAA applies. *See* Tex Civ Prac. & Rem.Code Ann. § 171.098(a)(1), (2) (Vernon 2005). Stanford, arguing that we have both mandamus and appellate jurisdiction in this case, has filed parallel proceedings seeking review of the trial court's order denying is motion to compel arbitration under both the state and federal acts.

"The FAA 'preempts state statutes to the extent they are inconsistent with that Act.' "

*In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006) (quoting *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992)). "For the FAA to preempt the TAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce." *Id.* As in *In re D. Wilson Constr. Co.*, "the parties have asserted nothing in the TAA or other state law that would subvert enforcement of the agreements at issue." 196 S.W.3d at 780. Thus, the FAA does not preempt the TAA. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 780. Because appellant has an adequate remedy at law by way of its interlocutory appeal, we deny the petition for writ of mandamus and choose to proceed by way of interlocutory appeal. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) ("Our requirement that mandamus will not issue where there is an adequate remedy by appeal is well-settled.").

when the cause of action accrues or discovery of a claim by Buyer. (Emphasis added).

After a hearing on Stanford's motion to compel arbitration, the trial court denied Stanford's motion, and this appeal followed.

## PROPRIETY OF DENIAL OF MOTION TO COMPEL ARBITRATION

On appeal, Stanford contends the trial court erred in denying its motion to compel arbitration. Specifically, Stanford contends that the trial court erroneously concluded that the Association was not bound by the arbitration clauses in the individual homeowners' contracts.

### Standard of Review and Applicable Law

Denial of a motion to compel arbitration generally triggers the abuse-of-discretion standard of review. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006). A trial court abuses its discretion when it acts arbitrarily or unreasonable and without reference to any guiding rules or principles. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex.1998); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law, we review this category of discretionary rulings de novo. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 781. However, when the ruling under review results from the trial court's having resolved underlying facts, we must defer to the trial court's factual resolutions and any credibility determinations that may have affected those resolutions, and we may not substitute our judgment for that of the trial court. *See Walker*, 827 S.W.2d at 839–40.

■■■ A party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (applying Texas General Arbitration Act). Because state and federal policies favor arbitration, a presumption exists favoring agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Cf. In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (discussing arbitration under the FAA).

### Are arbitration clauses in homeowners' contracts binding on the Association?

■■■ When determining the existence of a valid enforceable arbitration agreement, we also consider gateway matters such as whether a valid arbitration clause exists and whether an arbitration clause is binding on a nonparty. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig.proceeding). Courts may not order parties to arbitrate unless they have agreed to do so. *Belmont Constructors, Inc. v. Lyondell Petrochem. Co.*, 896 S.W.2d 352, 356–57 (Tex.App.-Houston [1st Dist.] 1995, no writ [appeal and orig. proceeding]). Consequently, despite a presumption favoring arbitration, a valid agreement to arbitrate remains a threshold requirement. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (orig.proceeding).

It is undisputed that there is an arbitration agreement between Stanford and 27 of the individual homeowners. The issue is whether the arbitration agreements can be enforced against the Association, a nonsignatory to the agreements. Courts have recognized six theories that may bind nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable es-

toppel, and (6) third-party beneficiary. *Kellogg Brown & Root,* 166 S.W.3d at 739.

Stanford argues that the fifth theory for binding nonsignatories—equitable estoppel—applies in this case. Specifically, Stanford argues that because the Association has filed suit based, in part, on the contractual terms found in the homeowners' earnest money contracts, it is estopped from denying the applicability of the arbitration provision in the same contract. We agree.

The supreme court has held that "a litigant who sues based on a contract subjects him or herself to the contract's terms." *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 755–56. When the nonsignatory asserts claims identical to the signatories' contract claims, all must be arbitrated. *Id.* Additionally, claims must be brought on the contract and arbitrated if liability arises solely from the contract or must be determined by reference to it. *In re Weekley Homes, L.P.,* 180 S.W.3d at 132. If a nonsignatory pursues a claim based "on the contract" of another, and the contract contains an arbitration clause, then the nonsignatory must pursue all claims—tort and contract—in arbitration. *Id.*

In this case, the Association alleged in its petition that Stanford "failed to comply with the express and implied contractual duties which they owed to [the Association's] Owners. [Stanford] breached [its] contracts." The only contracts giving rise to any express or implied contractual duties in this case are the earnest money contracts between Stanford and the individual homeowners. The Association also alleged that Stanford breached "express and/or implied warranties." The only express warranties are contained in the individual homeowners' earnest money contracts. Because the Association has filed suit seeking the benefits of the earnest money contracts, it cannot deny the applicability of the arbitration agreements in the same contracts. *See FirstMerit Bank,* 52 S.W.3d at 755; *Weekley Homes,* 180 S.W.3d at 134–35. As stated by the supreme court, "A nonparty cannot both have his contract and defeat it too." *Weekley Homes,* 180 S.W.3d at 135.

In addition to the claims based directly "on the contracts" of the individual homeowners, the Association also included DTPA claims, fraud, and intentional or negligent misrepresentation claims, and negligent design, construction, and supervision claims. However, because the Association chose to allege contract claims that are subject to arbitration clauses, and because the arbitration clauses in this case are broad enough to cover both contract and tort claims, the Association must also arbitrate the intertwined tort claims. *See Weekley Homes,* 180 S.W.3d at 132 (citing *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992)). Therefore, we conclude that equitable estoppel doctrine prevents the Association from denying the applicability of the arbitration clauses found in its homeowners' earnest money contracts.

We also conclude that because the Association is suing "on behalf of" the individual condominium owners, it stands in their shoes and is also bound by any arbitration provisions that bind them. Section 82.102(4) of the Uniform Condominium Act provides that a "unit Owners' Association" may "institute, defend, intervene in, settle, or compromise litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." Tex. Prop.Code Ann. § 82.102(4) (Vernon 2007). It its petition, the Association invokes its authority to bring suit under chapters 81 & 82 of the Condominium Act and alleges that "[t]he claims which [the Association] makes hereinafter *on behalf of the unit*

*owners* is limited to the common areas and elements for which [the Association] has management responsibility under the condominium declarations and under law." (Emphasis added). The Association purchased nothing from Stanford and serves only to represent the interests of the individual homeowners.

This Court considered an analogous situation in the case of *In re Jindal Saw Ltd.*, 264 S.W.3d 755 (Tex.App.-Houston [1st Dist.], orig. proceeding). In *Jindal Saw*, the decedent, who was killed on the job, had signed an arbitration agreement with his employer. *Id.* at 758. After his death, the decedent's wife brought a survival action in her capacity as representative of his estate. *Id.* at 759–60. The wife, in her individual capacity and as next friend for her children, also brought wrongful death actions. *Id.* This Court held that the wife was bound to arbitrate the survival action brought on behalf of the estate because by binding himself to arbitration, the decedent also bound his estate and claims brought on its behalf by the personal representative. *Id.* at 766. The wife was not, however, bound to arbitrate the wrongful death actions because those claims were never owned by the decedent or his estate, and he could not have bound the owner of those claims to arbitrate. *Id.* at 764–65.

By analogy, in this case, the individual owners bound themselves to arbitrate their claims with Stanford. Thus, the Association, when suing *on the owners' behalf,* is also bound to arbitrate, just as the wife, in *Jindal Saw,* when suing as personal representative of the decedents's estate, was bound to arbitrate claims brought on behalf of the estate.

Another jurisdiction has considered the issue more directly. In *Satomi Owners Ass'n. v. Satomi, LLC,* 139 Wash.App. 175, 159 P.3d 460 (2007), a condominium homeowners association filed suit against the condominium developer, alleging numerous construction defects. *Id.* at 462. The allegations included breach of express and implied warranties and violations of the Washington consumer protection act. *Id.* The developer moved to compel arbitration pursuant to a warranty addendum that was attached to each purchaser's original purchase and sales agreement, which relief the trial court denied. *Id.* The court of appeals held that "[i]f an association merely represents its owners/members, its standing is derivative, and it is subject to any defenses and limitations that may be asserted against them and is without a separate right to recover." Because the association brought the action "in a representative capacity, not on its own behalf as a separate juristic entity," it was bound by the arbitration provisions of its constituent members. *Id.* at 463.

We agree with the *Satomi* court. The Association's pleading clearly alleges that it is bringing suit on behalf of its constituent owners. The Association does not own the property that is the subject of the dispute. Each individual homeowner owns an undivided interest in the common areas that are the subject of this dispute. Although the Association has standing to bring the suit, its rights are limited to those possessed by the people it represents. Because the homeowners are bound by arbitration agreements, and the Association has sued on their behalf, it, too, is bound by the agreements.

### Are subsequent purchasers bound by arbitration clauses?

At the hearing on the motion to compel, the Association also argued that some of the original homeowners had already sold their condominiums to subsequent purchasers who did not sign the arbitration agreements. Thus, we must also determine whether these subsequent purchasers, even though nonsignatories to

earnest money contracts containing the arbitration provisions, are nonetheless required to arbitrate. We hold that they are.

By filing suit based on obligations set forth in the earnest money contracts, the subsequent purchasers are seeking to obtain the benefits of those contracts. Thus, the equitable estoppel principles discussed above should apply to them also. *See FirstMerit Bank*, 52 S.W.3d at 755–56 (holding nonsignatory donees of mobile home bound by arbitration clause found in donors' purchase contract because donees filed suit based on contract).

The case of *Phan v. Addison Spectrum, LP*, 244 S.W.3d 892 (Tex.App.–Dallas 2008, no pet.) considered an analogous situation. In *Phan*, the homeowners' association filed suit and settled a claim on behalf of its unit owners. *Id.* at 896. One homeowner, Phan, argued that the association did not have standing to settle her individual claims. *Id.* at 897. The court held that, "by virtue of her ownership of her unit, Phan is a member of [the association]", and "[u]nder Texas Property Code § 82.102, she therefore consented to allow [the association] to bring and settle the ACA suit in its own name and on her behalf." *Id. Phan*, thus, stands for the proposition that individual homeowners are bound by the consequences of a suit that was brought by their homeowners' association on their behalf and to which they have consented by virtue of their membership in the association.

The subsequent purchasers in this case, by virtue of their membership in the Association, have consented to allow the Association to bring the present suit on their behalf. Because the present suit is based on the initial purchasers' earnest money contracts, the association and all owners who, by virtue of their membership in the association have consented to allow it to sue on their behalf, are bound by the terms of those earnest money contracts, including the arbitration provisions.

***Did subsequent deeds extinguish arbitration clauses in earnest money contracts?***

■ At the hearing on the motion to compel arbitration, the trial court expressed some reservations that perhaps the "[earnest money] contract has been ultimately supplanted by deeds and all those kinds of things...." Thus, we must address whether the subsequent deeds extinguished the arbitration provisions that were in the earnest money contracts. Stanford argues that the arbitration agreement is a collateral agreement and that it continues to exist even after deeds for the property were transferred.

■ As a general rule, a deed made in full execution of a contract of sale of land merges the provisions of the contract. *Harris v. Rowe*, 593 S.W.2d 303, 306–07 (Tex.1979). However, the merger doctrine does not apply to a deed that constitutes only partial performance of the preceding contract. *Id.* The deed does not merge other distinct and unperformed provisions of the contract. *Id.* A contract for the sale of land that creates rights collateral to and independent of the conveyance, such as completion of construction or escrow agreements pending construction, survives a deed that is silent with respect to the construction or escrow agreement. *Id.*

In *Pleasant Grove Builders, Inc. v. Phillips*, the buyer purchased a home from the seller. 355 S.W.2d 818, 819 (Tex.Civ. App.-Dallas 1962, writ ref'd n.r.e.). The purchase agreement contained a promise by the seller to provide a title insurance policy. *Id.* at 823. On appeal, the seller argued that the buyer could not recover damages based on the seller's failure to provide title insurance because that provi-

sion of the purchase agreement merged with the subsequently-issued deed, which was silent on the issue. *Id.* The court of appeals held that "the agreement to furnish a title policy must be considered as a separate agreement, not superseded by the deed and properly not included in the deed." *Id.*

In *Head v. Finley*, the buyer purchased a house from the seller. No. 2–03–296–CV, 2004 WL 1699895 (Tex.App.–Fort Worth, pet. denied). The earnest money contract between the two provided that, in the event of a dispute between the parties arising out of the earnest money contract, the prevailing party in the dispute would be entitled to recover attorneys' fees. *Id.* at *7. On appeal, the buyer argued that the earnest money contract was extinguished by the merger doctrine when the deed to the property was delivered. *Id.* The court of appeals, citing *Harris v. Rowe* and *Pleasant Grove Builders, Inc. v. Phillips*, held that the merger doctrine did not apply and that the attorneys' fee provision of the earnest money contract survived. *Id.*

Again, another jurisdiction has considered the issue more directly. In *Drees Co. v. Osburg*, 144 S.W.3d 831, 832 (Ky.Ct.App. 2003), the buyers contracted for the construction and purchase of a new home. *Id.* at 832. The purchase agreement had an arbitration clause, but the deed that followed did not. *Id.* The seller moved for arbitration based on the arbitration clause in the purchase agreement, but the trial court denied the motion. *Id.* On appeal, the court reversed, holding that the merger doctrine did not apply to collateral agreements, and that the arbitration agreement was such a collateral agreement. *Id.* at 833.

Based on these authorities, we conclude that the doctrine of merger is not applicable in this case. The earnest money contracts in this case contained agreements that created rights collateral to and independent of the conveyance. For example, the earnest money contracts in this case, like the earnest money contract in *Pleasant Grove Builders, Inc. v. Phillips*, contained a promise by the seller to provide a title policy. Also, the earnest money contracts in this case, like the earnest money contract in *Head v. Finley*, contained an attorneys' fee provision. The arbitration provision, like the provisions mentioned above, created rights independent of the conveyance, and, as such, were not merged out of existence by the subsequent deeds.[2]

## CONCLUSION

Having determined that the Association and its members are bound by the arbitration clauses, which were not merged away by the issuance of the subsequent deeds, we hold that the trial court erred in denying Stanford's motion to compel arbitration.

Accordingly, we sustain Stanford's issues on appeal and reverse and remand for further proceedings.

---

**2.** While not necessary to the disposition of this issue, we note that many of the deeds specifically refer to the arbitration clause of the earnest money contracts and include the following or similar language:

> This conveyance is made AS IS, WHERE IS, AS BUILT, AND WITHOUT WARRAN-

TY OR REPRESENTATION, EXPRESS OR IMPLIED, EXCEPT THE SPECIAL WARRANTY OF TITLE CONTAINED HEREIN AND THE LIMITED WARRANTY SET FORTH IN PARAGRAPH 11 OF THE EARNEST MONEY CONTRACT....