**Reversed and Remanded and Opinion filed September 18, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-13-00849-CV

**THE SUBSEA COMPANY, Appellant**

**V.**

**RAQUEL PAYAN AND SEVEN ONSHORE/OFFSHORE, LLC, Appellees**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2013-41018**

## O P I N I O N

The Subsea Company appeals from the trial court's denial of its motion to compel arbitration with its former employee, Raquel Payan. *See* Tex. Civ. Prac. & Rem. Code § 171.098(a)(1) (authorizing interlocutory appeal from order denying motion to compel arbitration). The claims at issue concern Payan's demand for additional sales commissions. The parties dispute whether executing a subsequent employment agreement containing no arbitration clause revoked the clause in an

earlier commissions agreement. The trial court held that there was no valid agreement to arbitrate. We reverse and remand.

## *Background*

Subsea is a manufacturer of specialty components used in offshore oil and gas drilling and production. On June 1, 2010, Payan and Subsea executed an agreement titled "FY10 Sales Incentive Plan" (the Incentive Plan). The stated term of the agreement was May 24, 2010 to May 24, 2011. The Incentive Plan listed Payan as an "Account Manager" for the company and set her base salary as well as the structure for her commissions. The Incentive Plan included considerable detail regarding how commissions were to be calculated, what types of sales were included and excluded, when payments would be made, and what types of special circumstances might arise. The Incentive Plan further set sales quotas and listed other duties for Payan, stated she was an "at-will employee," contained non-compete, non-solicitation, and confidentiality provisions, and provided that any "inventions" she might create while working for Subsea would belong to Subsea. Additionally, the Incentive Plan contained a survivability clause, providing in part:

> Provisions of this Agreement which, by their operation, are intended to survive after termination, non-renewal or expiration of this Agreement, shall so survive.

The Incentive Plan also contained a merger clause as follows:

> This Agreement contains the entire understanding of the parties concerning the subject matters set forth herein, and it may not be modified in any way except in writing and signed by the Company and by Sales Employee. This Agreement supersedes and replaces any and all other commission and/or bonus agreements that might exist between Company and Sales Employee.

Lastly, and of particular importance here, the Incentive Plan contained an arbitration clause, providing in part:

2

The Parties agree that any disputes or questions arising hereunder, in particular concerning its formation, existence, validity, effects, interpretation, implementation, violation, resolution or annulment, shall be finally resolved by means of arbitration in accordance with the arbitration rules of the state of Texas . . . .

On January 27, 2012, Payan and Subsea entered a second agreement, titled "At-Will Employment, Non-Competition, Confidential Information, Invention Assignment, and Arbitration Agreement" (the Employment Agreement). According to Payan, as stated in her affidavit, Subsea gave her a draft copy of the Employment Agreement in January 2012, and requested that she review the document and make any revisions or strike any provisions she did not agree to and return it. Payan made several changes to the draft before signing it, including the complete deletion of a fairly broad arbitration clause.

The Employment Agreement contained several provisions concerning the same subjects as in the Incentive Plan, including non-compete, non-solicitation, and confidentiality provisions, a provision that any inventions Payan might create would belong to Subsea, and a statement that her employment was on an "at-will" basis. Unlike the Incentive Plan, however, the Employment Agreement contained no language specifically addressing Payan's compensation or the structure of her commissions. As mentioned, the draft of the Employment Agreement contained a detailed arbitration agreement, but Payan inserted at the beginning of this provision, paragraph 11, the following language, which appears in the final agreement: "(To delete all of 11. Do not want to waive my rights.)" In her affidavit, she stated that this statement indicated that paragraph 11 should be deleted from the agreement and she did not intend "to waive my rights to have any disputes resolved by a court." The Employment Agreement also contained a merger clause similar to that in the Incentive Agreement, specifically stating that it is "the entire agreement . . . between [Subsea and Payan] relating to the subject

3

matter herein."

Payan resigned from Subsea's employment in June 2013.[1]  Subsea then filed a lawsuit against Payan, alleging that she had stolen thousands of documents from Subsea, some of which contained confidential and proprietary information.  Payan subsequently counterclaimed for breach of contract and quantum meruit, alleging that Subsea owed her additional unpaid commissions.  Subsea then filed its motion to compel arbitration of the counterclaims, which Payan opposed.  According to Subsea, arbitration is mandated by the arbitration clause in the Incentive Plan because the counterclaims concern the payment of commissions, which is governed only by that agreement.  Payan insists to the contrary that when the parties entered the Employment Agreement—after her deletion of the broad arbitration clause in the draft—the arbitration clause in the prior agreement was revoked as to all disputes, including those concerning commissions.  The trial court agreed with Payan and denied the motion to compel arbitration of the counterclaims.  Subsea now appeals.

### *Standards of Review*

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the claims in dispute fall within the scope of that agreement.  *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007).  Because arbitration is a creature of contract, we apply state-law principles of contract law in determining the validity of an arbitration agreement.  *Branch Law Firm, L.L.P. v. Osborn*, No. 14-13-00820-CV, 2014 WL 4199206, at *4 (Tex. App.—Houston [14th Dist.] August 26, 2014, no pet. h.).  Whether a valid arbitration agreement

---

[1] Payan apparently founded the other appellee in this appeal, Seven Onshore/Offshore, LLC, in July 2013.  This appeal does not concern any issues directly involving Seven Onshore/Offshore.

4

exists is a legal question subject to de novo review. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006).

*Analysis*

As mentioned, Payan asserts, and the trial court apparently agreed, that execution of the Employment Agreement—after deletion of the arbitration clause in the draft—means that there is no existing arbitration clause between the parties, not even the one contained in the Incentive Plan.[2] It is not before this Court, and, thus, we do not decide, whether Payan's deletion of the proposed arbitration clause in the Employment Agreement effectively revoked the arbitration clause in the Incentive Plan as to subjects expressly addressed in both agreements. Commissions, the subject of the counterclaims, were not expressly addressed in the Employment Agreement.

Generally, when parties enter into a second contract dealing with the same subject matter as a prior contract without stating whether the second contract operates as a discharge of or substitute for the first, the two contracts must be interpreted together and the later contract prevails to the extent they are inconsistent. *N. Natural Gas Co. v. Oneok Bushton Processing, Inc.*, No. 14-11-00539-CV, 2012 WL 4364652, at *9 (Tex. App.—Houston [14th Dist.] Sept. 25, 2012, no pet.) (mem. op.); *The Courage Co., L.L.C. v. The Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.); 6 Corbin on Contracts § 1293, 1296 (1962). The portion of the earlier contract not in conflict with the later contract remains enforceable. *N. Natural Gas*, 2012 WL 4364652, at

---

[2] Payan argues in her brief that there is no valid agreement between the parties to arbitrate because (1) she struck through the proposed arbitration provision in the Employment Agreement, (2) the parties contracted for the Employment Agreement to govern over inconsistent terms in the Incentive Agreement, and (3) Subsea conceded that the Employment Agreement governs the parties' employment relationship when it sued Payan under it.

5

*9; *The Courage Co.*, 93 S.W.3d at 333.

The Employment Agreement did not specifically state that it acted as a discharge of or substitution for the Incentive Plan. As discussed above, there are a number of provisions found in both contracts—including the non-compete, non-solicitation, and confidentiality provisions, and the provisions concerning inventions. We are not asked in this appeal whether the later agreement prevails as to these subjects. The Employment Agreement, however, contains no provisions concerning commissions or the arbitration of disputes regarding them, so the earlier agreement is not in conflict regarding that subject and therefore remains enforceable.[3] Under the Incentive Plan, disputes about commissions are subject to arbitration.[4] The Employment Agreement does not contain any clause conflicting with the Incentive Plan's requirement that disputes concerning commissions are subject to arbitration. The Employment Agreement neither contains an arbitration clause nor a provision revoking the arbitration clause in the Incentive Plan.[5]

---

[3] Payan argues that the merger clause of the Employment Agreement provides that that agreement (1) contains the entire agreement and understanding between the parties about Payan's "employment" and (2) controls over inconsistencies between it and the Incentive Agreement, including the arbitration provision. We conclude that this reading is too broad. As Payan acknowledges, the Employment Agreement's merger clause stated that it was "the entire agreement and understanding between [Subsea and Payan] *relating to the subject matter herein*" (emphasis added). As explained above, neither commissions nor the arbitration of disputes over commissions are subject matters of the Employment Agreement. The merger clause therein therefore does not control over provisions of the Incentive Plan.

[4] As set forth above, the arbitration provision in the Incentive Plan states, "The Parties agree that any disputes or questions arising hereunder, in particular concerning its formation, existence, validity, effects, interpretation, implementation, violation, resolution or annulment, shall be finally resolved by means of arbitration . . . ."

[5] Payan suggests that her statement in deleting the proposed arbitration clause from the Employment Agreement—"To delete all of 11. Do not want to waive my rights."—indicated an intention to not arbitrate any disputes between the parties to that agreement. But, as explained, the Employment Agreement did not address any rights having to do with payment of commissions. Thus, even if Payan is correct that her statement evidenced such an intent, it was limited to the subject matter of the Employment Agreement and does not control the resolution

Payan mentions in her brief that the Incentive Plan "expired," although her counterclaims refer to it as a "valid and enforceable contract." It is undisputed that, even though the term of the Incentive Plan was through May 24, 2011, the parties continued to operate under it for payment of commissions even after the execution of the Employment Agreement in January 2012. *See, e.g., Elec. Bankcard Sys., Inc. v. Retriever Indus., Inc.,* No. 01-01-00240-CV, 2003 WL 204717, at *6 Tex. App.—Houston [1st Dist.] Jan. 30, 2003, no pet.) (mem. op.) ("When a contract is executed, whereby one party is to serve another for a definite period, and the employment continues after the expiration of the period without an express contract renewal, there is a presumption that the employment continues under the terms of the expired contract."); *Salazar v. Coastal Corp.,* 928 S.W.2d 162, 166 (Tex. App.—Houston [14th Dist.] June 20, 1996, no writ) ("It is well settled in Texas that a continuance of the employment relationship in accordance with the terms of a written employment contract after the contract has expired by lapse of time is a continuance of the old contract as a matter of law."). Indeed, Payan's counterclaim for unpaid commissions is based, at least in part, on enforcement of the agreement past its termination date.

To the extent that Payan challenges the validity of the arbitration provision based on an expiration of the Incentive Agreement, we conclude that the Incentive Plan continued in full force, at least as to the subject of commissions. We conclude that the Incentive Plan controls the parties' disputes over commissions and contains an arbitration clause that was left undisturbed by the Employment Agreement. Accordingly, Subsea has established the existence of a valid arbitration agreement and shown that the counterclaims fall within the scope of that agreement. *See In re Bank One*, 216 S.W.3d at 826. Therefore, the trial court

---

of disputes on payment of commissions under the Incentive Plan.

erred in overruling Subsea's motion to compel arbitration on Payan's counterclaims for unpaid commissions.

We reverse the trial court's order denying Subsea's motion to compel arbitration and remand for further proceedings in accordance with this opinion.


/s/ Martha Hill Jamison
   Justice


Panel consists of Justices Christopher, Jamison, and McCally.