ACCEPTED
04-15-00427-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/17/2015 6:56:49 PM
KEITH HOTTLE
CLERK

## No. 04-15-00427-CV

### In The
### Court of Appeals for the
### Fourth Court of Appeals District
### San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
08/17/2015 6:56:49 PM
KEITH E. HOTTLE
Clerk

_____

Crawford Medical Supplies, LLC, Sam Maddali,
Prem Swaroop Kalidindi, and Maddali Realty, LLC
Appellants

versus

Huntleigh Home Medical, Ltd. and Jane Elizabeth Flores
Appellees

_____

Appeal From the 57th Judicial District Court, Bexar County, Texas
No. 2013-CI-00404

# BRIEF OF APPELLANTS

Pulman, Cappuccio, Pullen, Benson & Jones, LLP
Elliott S. Cappuccio
Texas State Bar No. 24008419
Leslie Sara Hyman
Texas State Bar No. 00798274
Etan Z. Tepperman
Texas State Bar No. 24088515
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 (Telephone)
(210) 892-1610 (Facsimile)

*Attorneys for Appellants*

APPELLANTS REQUEST ORAL ARGUMENT

IN THE
COURT OF APPEALS FOR THE
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

_____

CRAWFORD MEDICAL SUPPLIES, LLC, SAM MADDALI,
PREM SWAROOP KALIDINDI, AND MADDALI REALTY, LLC
APPELLANTS

VERSUS

HUNTLEIGH HOME MEDICAL, LTD. AND JANE ELIZABETH FLORES
APPELLEES

_____

## IDENTITY OF PARTIES AND COUNSEL

Appellants:
Crawford Medical Supplies, LLC
Sam Maddali
Prem Swaroop Kalidindi
Maddali Realty, LLC

Counsel for Appellants:
Elliott S. Cappuccio
Leslie Sara Hyman
Etan Z. Tepperman
Pulman, Cappuccio,
Pullen, Benson & Jones, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213

Appellees:
Huntleigh Home Medical, Ltd.
Jane Elizabeth Flores

Counsel for Appellees:
Mark Murphy
Davis & Santos
Attorneys & Counselors, P.C.
112 East Pecan Street, Suite 900
San Antonio, Texas  78205

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................. i

TABLE OF CONTENTS ............................................................................ ii

INDEX OF AUTHORITIES.......................................................................... iii

STATEMENT OF THE CASE ......................................................................... 1

ORAL ARGUMENT STATEMENT ..................................................................... 2

ISSUES PRESENTED.............................................................................. 2

STATEMENT OF FACTS ........................................................................... 3

SUMMARY OF THE ARGUMENT ...................................................................... 7

ARGUMENT AND AUTHORITIES...................................................................... 9

I.  Standard for Enforcement of Arbitration Agreements ........................................ 9

II.  The Trial Court Erred in Denying
Defendants' Motion to Compel Arbitration ...................................................... 11

    A.  An Agreement to Arbitrate Exists ........................................................ 11

    B.  Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement ..... 14

        1.  A Broad Arbitration Clause Such as the One at Issue Covers
Contract and Tort Claims and Claims Factually Intertwined with
Arbitrable Claims ............................................................................. 14

        2.  The Arbitration Clause Covers All the Claims at Issue in this Appeal .. 16

CONCLUSION AND PRAYER ........................................................................ 21

CERTIFICATE OF COMPLIANCE .................................................................... 23

CERTIFICATE OF SERVICE ....................................................................... 23

# INDEX OF AUTHORITIES

**Cases**                                                                                            **Page**

*Associated Glass, Ltd. v. Eye Ten Oaks Investments, Ltd.,*
    147 S.W.3d 507 (Tex. App.—San Antonio 2004, no pet.) .............................. 11

*Enter. Field Servs., LLC v. Toc-Rocky Mt., Inc.,*
    405 S.W.3d 767 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ....... 10, 15

*Forest Oil Corp. v. McAllen,*
    268 S.W.3d 51 (Tex. 2008) ............................................................................ 11

*Global Fin. Servs., L.L.C. v. Estate of Brittingham-McLean*
*(In re Global Fin. Servs., L.L.C.),*
    No. 04-04-00854-CV, 2007 WL 1759940
    (Tex. App.—San Antonio June 20, 2007, orig. proceeding) ........................... 15

*In re Cutler-Gallaway Servs.,*
    No. 04-07-00216-CV, 2007 WL 1481999
    (Tex. App.—San Antonio May 23, 2007, orig. proceeding) ........................... 13

*In re Double S Petroleum, Ltd.,*
    No. 04-05-00643-CV, 2005 WL 3406295
    (Tex. App.—San Antonio Dec. 14, 2005, orig. proceeding) ........................... 14

*In re FirstMerit Bank, N.A.,*
    52 S.W.3d 749 (Tex. 2001) .................................................................. 9, 10, 15

*In re Vesta Ins. Group, Inc.,*
    192 S.W.3d 759 (Tex. 2006) ........................................................................ 13

*In re Weekley Homes, L.P.,*
    180 S.W.3d 127 (Tex. 2005) ........................................................................ 13

*Jack B. Anglin Co. v. Tipps,*
    842 S.W.2d 266 (Tex. 1992) ..................................................................... 9, 15

**Cases (Continued)**                                                                    **Page**

*Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*,
    285 S.W.3d 45 (Tex. App.—Houston 1st Dist. 2009, no pet.)................... 13, 14

*Subsea Co. v. Payan*,
    448 S.W.3d 557 (Tex. App.—Houston [14th Dist.] 2014) ............................. 10

*Williams Indus. v. Earth Dev. Sys. Corp.*,
    110 S.W.3d 131 (Tex. App.—Houston [1st Dist.] 2003, no pet.)................10, 16

**Statutes**

Tex. Civ. Prac. Rem. Code § 171.001 ...................................................... 9

Tex. Civ. Prac. Rem. Code § 171.021 ...................................................... 9

## STATEMENT OF THE CASE

*Nature of the Case*  Appellees, Huntleigh Home Medical, Ltd. and Jane Elizabeth Flores filed suit in 2013. CR 1-14. On March 31, 2015, they filed an amended pleading, raising claims related to an agreement between Appellees and Appellants Sam Maddali and Prem Swaroop Kalidindi to form Appellant Crawford Medical Supplies, LLC. CR 425-43. Crawford Medical Supplies, LLC is governed by an Operating Agreement containing an arbitration clause. CR 71-72. Appellants thus moved to compel arbitration of Appellees' claims against them and of employment-related claims by Plaintiff Michael Flores that had previously been compelled to arbitration, dismissed, and refiled. CR 446-556. The trial court agreed that Michael Flores's claims should be arbitrated but denied the motion to compel arbitration of Appellees' claims. CR 570-71.

*Trial Court*  The Honorable Michael Mery of the 37th Judicial District Court, Bexar County, Texas.

*Trial Court's Disposition*  The trial court denied Appellants' Plea in Abatement and Motion to Compel Jurisdiction as to the claims alleged by Appellees. CR 570-71.

## ORAL ARGUMENT STATEMENT

Appellants request oral argument because the question of whether an arbitration agreement covers a plaintiff's claims requires a case-specific comparison between the arbitration agreement and the allegations in the plaintiff's petition. Oral argument would allow for the Court and the parties to conduct this comparison together to facilitate the Court's analysis.

## ISSUES PRESENTED

I.    Whether the trial court erred in refusing to compel arbitration of claims arising from the formation and operation of Crawford Medical Supplies, LLC when those claims relate to, touch, or concern the company's Operating Agreement, which contains an arbitration clause.

II.   Whether the trial court erred in refusing to compel arbitration of claims that are factually intertwined with arbitrable claims arising from the formation and operation of Crawford Medical Supplies, LLC.

## STATEMENT OF FACTS

This business dispute litigation arises from decisions in November 2011 by Plaintiffs Michael Flores and Jane Elizabeth Flores and Defendants Sam Maddali and Prem Swaroop Kalidindi to together form Crawford Huntleigh Medical Supplies, Ltd., which became Defendant Crawford Medical Supplies, Ltd. ("CMS"). CR 428-29. CMS was intended to continue a business selling and/or renting durable medical equipment such as wheelchairs, walkers, and hospital beds that was started by Plaintiff Huntleigh Home Medical, Ltd. CR 428-29, 501.

Plaintiffs Michael Flores and Jane Elizabeth Flores are limited partners in Huntleigh Home Medical. CR 499. In late 2011, Huntleigh Home Medical was unable to service its clients and was having significant financial difficulty because virtually all of its equipment was secured by liens in favor of Jefferson Bank, the Internal Revenue Service had a tax lien levied against its assets, and it lacked capital to purchase new equipment. CR 428-29, 501-02.

In November 2011, the Floreses approached Defendants Prem Kalidindi and Sam Maddali about a possible sale of Huntleigh Home Medical. CR 501-02. Kalidindi and Maddali understood that Huntleigh Home Medical was having financial difficulty but nevertheless agreed to look into the possibility of purchasing Huntleigh Home Medical and began conducting due diligence on the

company. *Id.* As a result of that due diligence, Kalidindi and Maddali determined that Huntleigh Home Medical had very little value because of the liens and that there was little or nothing for Kalidindi and Maddali to purchase. CR 502.

The parties' discussions then turned toward starting a new durable medical equipment company together. CR 428-29, 432-33, 502. Those discussions culminated in the formation of CMS. CR 428-29, 502.

From the beginning, the members of CMS were Obdulia, Ltd., Prem Kalidindi, and Annapurna Maddali, who is Sam Maddali's wife. CR 502. The managing member of Obdulia, Ltd. is Richard Flores, who was Michael Flores's father and Jane Elizabeth Flores's husband. *Id.*

An Operating Agreement was prepared for CMS, which Jane Elizabeth Flores signed on behalf of Richard Flores. CR 505-31. The Operating Agreement provides that it "constitutes the whole and entire agreement of the Members" with respect to its subject matter and "replaces and supersedes all prior written and oral agreements by and among the Members or any of them." CR 527. The Operating Agreement contemplated that Michael Flores would enter into an employment agreement with CMS, which occurred. CR 507, 533-41.

Plaintiffs filed suit on January 9, 2013. CR 1-14. In their Original Petition, Michael Flores asserted a claim for breach of contract/quantum meruit against CMS for breach of his employment agreement and joined the other Plaintiffs in

asserting various tort claims arising from their theory that CMS had stolen their business. CR 9-12. Through prior counsel,[1] Defendants moved to compel arbitration (CR 32-75) and by order dated August 20, 2013, the trial court granted the motion in part and compelled to binding arbitration Mr. Flores's claim for breach of the employment agreement as well as "any other claim he asserts under that Employment Agreement" (CR 112-14). The Court further ordered that "any claim made by Obdulia LLC, and including any claims asserted by Obdulia or Michael Flores that relate to the Operating Agreement only, touching or concerning this operating agreement is also compelled to binding arbitration" while "the claims not compelled to arbitration may proceed in District Court." CR 113. The reference to claims by Obdulia is curious as Obdulia has never asserted any claims in this litigation and was not before the trial court at the time of the August 30, 2013 Order or any time since.

Despite having had his claims compelled to arbitration, Michael Flores never filed an arbitration proceeding. RR 14. Instead, on March 31, 2015, Michael Flores joined Huntleigh Home Medical and Jane Elizabeth Flores in filing their Third Amended Petition. CR 425-43. In that Third Amended Petition, Plaintiffs allege claims (for breach of contract/quantum meruit, promissory estoppel, conversion, tortious interference with contract, and

---

[1] The undersigned and her firm substituted in as counsel for Defendants in July 2014. CR 299-305, 307-08.

misappropriation of trade secrets, fraud and negligent misrepresentation, fraudulent transfer, and money had and received) that arise from the parties' negotiations and eventual agreement to form a new company together and the operation of that new company, CMS. CR 433-41. Additionally, Michael Flores asserted the exact employment claim for breach of contract/quantum meruit that had previously been compelled to arbitration. CR 434-35.

Because Plaintiffs' newly filed claims all relate to, touch, or concern the Operating Agreement, Defendants filed a Plea in Abatement and Motion to Compel Arbitration. CR 547-55. The trial court granted the motion as to the claims pled by Michael Flores but denied arbitration of the claims pled by Plaintiffs Huntleigh Home Medical and Jane Elizabeth Flores. CR 570-71. This appeal followed. CR 696-98.

This lawsuit arises from the parties' agreement to form a business and the operations of that business. The business's operations are governed by an Operating Agreement and the claims at issue in this appeal touch on the subject matter of the Operating Agreement. The Operating Agreement contains an arbitration clause.

The arbitration clause in the Operating Agreement is a broad one, covering tort claims as well as contract claims. Plaintiffs' claims are all factually intertwined and the evidence necessary for Plaintiffs to succeed on their non-contractual claims will also be necessary to establish their related contract claims.

While Plaintiffs did not personally sign the Operating Agreement, Michael Flores and Jane Elizabeth Flores acted as agents or representatives of CMS and one of its members and the CMS Operating Agreement expressly provides that it shall be binding on CMS's Members and their representatives and assigns. Moreover, even absent an express provision, as a matter of law, nonsignatory agents, employees, and representatives of a party to a contract containing an arbitration clause are covered by that arbitration clause. Finally, Plaintiffs are bound by the arbitration clause because they are pursuing claims arising out of the operations of CMS and thus, based upon the Operating Agreement.

Because the claims that are the subject of this appeal relate to the operation of CMS and the winding down of Huntleigh Home Medical, the operation of CMS is governed by an Operating Agreement containing an arbitration clause, and Plaintiffs are bound by the arbitration clause, the trial court erred in refusing to compel arbitration of those claims.

## ARGUMENT AND AUTHORITIES

### I. Standard for Enforcement of Arbitration Agreements

Under Texas law, arbitration agreements are valid and enforceable. Tex. Civ. Prac. Rem. Code § 171.001. Accordingly, a court shall order parties to arbitrate a dispute upon a showing that an agreement to arbitrate exists that covers the claims in question. *Id.* §§ 171.001, 171.021; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). Because the main benefits of arbitration lie in the expedited and less expensive disposition of a dispute, the Texas Legislature and the Texas Supreme Court have determined that a court may decide a plea in abatement or motion to compel arbitration summarily. *See* Tex. Civ. Prac. Rem. Code § 171.021(b); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex. 1992). Accordingly, a court considering a motion to compel arbitration shall determine the applicability of the arbitration clause based upon the affidavits submitted in support and opposition to the plea. *Jack B. Anglin Co.,* 842 S.W.2d at 269.

"To determine whether a party's claims fall within an arbitration agreement's scope, [the trial court is to] focus on the complaint's factual allegations rather than the legal causes of action asserted." *In re First Merit Bank,* 52 S.W.3d at 754. Arbitration is proper when the facts alleged "'touch matters' covered by the underlying agreement of which the arbitration agreement is a part."

*Williams Indus. v. Earth Dev. Sys. Corp.,* 110 S.W.3d 131, 137 (Tex. App.—Houston [1st Dist.] 2003, no pet.). There is a strong public policy favoring arbitration and any doubts regarding the scope of an agreement to arbitrate are to be resolved in favor of arbitration. *In re First Merit Bank,* 52 S.W.3d at 753 ("Because state and federal policies continue to favor arbitration, a presumption exists favoring agreements to arbitrate under the FAA, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration."); *Williams Indus.,* 110 S.W.3d at 137 (same, citing cases under the FAA and TAA).

Once the trial court finds a valid agreement to arbitrate and determines that the party's claims fall within the scope of that agreement, the court must order arbitration. *In re FirstMerit Bank,* 52 S.W.3d at 753-54 ("Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings."). Arbitration is proper even where the claims in question are counterclaims. *See, e.g., Subsea Co. v. Payan,* 448 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2014) (holding that trial court had erred in overruling motion to compel arbitration on counterclaims); *Enter. Field Servs., LLC v. Toc-Rocky Mt., Inc.,* 405 S.W.3d 767, 774 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (same).

This Court generally reviews "a trial court's determination regarding the existence of an arbitration agreement under the Texas Arbitration Act under an abuse of discretion standard." *Associated Glass, Ltd. v. Eye Ten Oaks Investments, Ltd.*, 147 S.W.3d 507, 512 (Tex. App.—San Antonio 2004, no pet.). "The trial court's interpretation of the arbitration clause, however, is a legal question subject to *de novo* review." *Id.* And where the appeal "turns on a legal determination," a de novo standard is likewise applied. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n.9 (Tex. 2008).

## II. The Trial Court Erred in Denying Defendants' Motion to Compel Arbitration

The claims alleged by Huntleigh Home Medical and Jane Elizabeth Flores all relate to the agreement between the parties to form a new entity and the operation of that new company thereafter. Their claims therefore should have been compelled to arbitration.

### A. An Agreement to Arbitrate Exists

The parties' discussions regarding the struggling Huntleigh Home Medical and ways to continue its home health care business despite its financial woes culminated in the formation of CMS. CMS's Operating Agreement provides for binding arbitration. Specifically, the Operating Agreement provides:

Except as otherwise provided in this Agreement, any dispute, controversy or claim arising out of or relating to this Agreement, or any breach thereof, including without limitation any claim that this Agreement, or any part hereof, is invalid, illegal or otherwise voidable or void, shall be submitted to binding arbitration by an American Arbitration Association ("AAA") arbitrator, or such other arbitrator as may be agreed upon by the parties. Hearings on such arbitration shall be conducted in Bexar County in the State of Texas or if not arbitrator is available in such county, any county in the State of Texas. A single arbitrator shall arbitrate any such controversy. The arbitrator shall hear and determine the controversy in accordance with applicable law and in the intention of the parties as expressed in this Agreement, upon the evidence produced at an arbitration hearing scheduled at the request of either party. Judgment on the award of the arbitrator may be entered in any court having jurisdiction thereof.

CR 527-28

It is irrelevant that Plaintiffs did not personally sign the Operating Agreement. The Operating Agreement expressly provides that it shall be "binding on and inure to the benefit of the Members and their heirs, personal representatives, and permitted assigns." CR 528. Jane Elizabeth Flores and Michael Flores acted as agents or representatives of CMS. CR 502. For example, Jane Elizabeth Flores acted as an agent or representative of CMS member Obdulia when she signed the Operating Agreement. CR 505-31. Michael Flores acted as an agent or representative of CMS and its Members when, according to Plaintiffs, he worked to obtain "accreditation for CMS from the Accreditation Commission for Health Care, Inc." CR 430. Binding Plaintiffs to arbitration is thus within the express terms of the Operating Agreement.

Arbitration of Plaintiffs' claims would be appropriate even without such a provision. "When contracting parties agree to arbitrate all disputes 'under or with respect to' a contract . . . they generally intend to include disputes about their agents' actions." *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 762 (Tex. 2006). For that reason, nonsignatory agents, employees, and representatives of a party to a contract containing an arbitration clause are covered by that arbitration clause. *See In re Cutler-Gallaway Servs.,* No. 04-07-00216-CV, 2007 WL 1481999, at *2 (Tex. App.—San Antonio May 23, 2007, orig. proceeding) ("When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement." (citations omitted)).

Even absent an agency or employment relationship, where, as here, "a nonsignatory pursues a claim based 'on the contract' of another, and the contract contains an arbitration clause, then the nonsignatory must pursue all claims—tort and contract—in arbitration." *Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n,* 285 S.W.3d 45, 49 (Tex. App.—Houston 1st Dist. 2009, no pet.). Likewise, a nonsignatory may be compelled to arbitration when, as here, the nonsignatory behaved as if he or she were a party to the agreement prior to filing a lawsuit. *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 135 (Tex. 2005) (holding that "when a nonparty consistently and knowingly insists that others treat

it as a party, it cannot later 'turn[] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful'" (citations omitted)).

It is undisputed that Plaintiffs agreed to form CMS and then behaved as if they were part of that business. They acted as representatives and/or agents of Obdulia, LLC, which was a party to the Operating Agreement. They bring claims on the contract. Plaintiffs are thus bound by the terms of the arbitration clause in the Operating Agreement and the trial court erred in refusing to compel their claims to arbitration.

## B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement

The arbitration clause in the Operating Agreement is a broad one. It covers not only claims of breach of the Operating Agreement but "any dispute, controversy or claim arising out of or relating to" the Operating Agreement. CR 527-28.

### 1. A Broad Arbitration Clause Such as the One at Issue Covers Contract and Tort Claims and Claims Factually Intertwined with Arbitrable Claims

An arbitration clause, such as the one here, that covers not only contract claims but "any dispute" that is "arising out of or relating to" the contract covers tort claims as well as contract claims. *See Stanford Dev. Corp.*, 285 S.W.3d at 49 (holding that arbitration was required of both contract claims and intertwined tort claims); *In re Double S Petroleum, Ltd.*, No. 04-05-00643-CV, 2005 WL 3406295, at *3 (Tex. App.—San Antonio Dec. 14, 2005, orig. proceeding)

(compelling arbitration of tort claims because "when an arbitration provision uses the language 'any dispute,' it is considered broad").  Because "Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter," where the evidence necessary to establish non-contractual claims will also be necessary to establish related contract claims, all the claims are subject to the contract's arbitration clause.  *Jack B. Anglin Co.*, 842 S.W.2d at 271 ("Although the City's misrepresentation claims are grounded in a legal theory distinct from its contract claim, they are factually intertwined, and thus are subject to the arbitration provision of the contract."); *see also In re FirstMerit Bank,* 52 S.W.3d at 755 (compelling arbitration of tort claims because "a litigant who sues based on a contract subjects him or herself to the contract's terms"); *Enter. Field Servs.,* 405 S.W.3d at 773 ("To be subject to arbitration, the 'allegations need only be factually intertwined with arbitrable claims or otherwise touch on the subject matter of the agreement containing the arbitration provision.'").

Even if the claims are not deemed factually intertwined, where, as here, a party is pursing claims based on a relationship created by a contract containing an arbitration clause, both tort-based and contract-based claims arising out of that relationship must be arbitrated.  *Global Fin. Servs., L.L.C. v. Estate of Brittingham-McLean (In re Global Fin. Servs., L.L.C.),* No. 04-04-00854-CV,

2007 WL 1759940, *6 (Tex. App.—San Antonio June 20, 2007, orig. proceeding) ("[A]s Aguirre is pursuing his claims based on the relationship created by the Customer Agreement, he must pursue all his claims, both tort-based and contract-based, in arbitration."); *Williams Indus.,* 110 S.W.3d at 138 ("Each of these extra-contractual claims arose out of, related to, or 'touched matters' covered by the two subcontracts and were thus covered by the arbitration agreement.").

## 2. The Arbitration Clause Covers All of the Claims at Issue in this Appeal

Plaintiffs' claims all arise from or relate to the formation and operation of CMS and thus arise from or relate to the Operating Agreement. The Operating Agreement provides that it "constitutes the whole and entire agreement of the Members" with respect to its subject matter and "replaces and supersedes all prior written and oral agreements by and among the Members or any of them. CR 527. The Operating Agreement further provides,

> Each Member shall look solely to the assets of the Company for the return of the Member's investment, and if the Company property remaining after the payment or discharge of all prior debts and obligations is consumed in full, then such Member shall have no recourse against any other Members for indemnification, contribution, or reimbursement.

*Id.* Plaintiffs' own discovery requests to Defendants seek information regarding capital calls "as that term is defined in the Operating Agreement" and distributions

or payments from CMS to Obdulia to Plaintiffs and thus indicate that the Operating Agreement governs the parties' relationship. *See* CR 554-55.

Plaintiffs' allege in their Third Amended Petition that "Maddali, Michael, Belle, and Huntleigh – agreed that they would begin the process of starting the new home health care company and all that required, such as gaining accreditation and negotiating contracts with third party payors, while Huntleigh wound down its operations." CR 428. They acknowledge that the "new home health care company" is CMS. In fact, Plaintiffs' first claim alleges that Michael Flores, Belle Elizabeth Flores, and Huntleigh Home Medical "agreed with [Sam] Maddali to start a new home health care company, which eventually became CMS." CR 433. Plaintiffs claim that Sam Maddali breached this agreement "by refusing to allow Plaintiffs to wind down the operations" of Huntleigh Home Medical and by taking the assets of Huntleigh Home Medical for use in CMS without paying for them. CR 434. Setting aside, as one must on a motion to compel arbitration, the merits of this allegation and whether or not the parties had in fact agreed that CMS would be able to use any non-liened assets of Huntleigh Home Medical, this claim obviously relates to the formation and operation of CMS. Complaints about the formation and operation of CMS are, at the very least, "related to" CMS's Operating Agreement. The trial court erred in refusing to order CMS's first claim to arbitration.

Plaintiffs' next claim, for promissory estoppel, also arises from their allegations that (1) Maddali promised to provide support for Huntleigh Home Medical while it wound down its operations in exchange for the Floreses' help in starting CMS together; and (2) that Maddali would pay Huntleigh Home Medical for any equipment or property used. CR 435. This claim thus likewise relates to the parties' agreement to form CMS and, as part of CMS's operations, wind down Huntleigh Home Medical. *Id.* This claim about the formation and operation of CMS relates to its Operating Agreement and is factually intertwined with Plaintiffs' claim for breach of the parties' agreement to form CMS and the trial court erred in refusing to order it to arbitration.

Huntleigh Home Medical's claim for conversion contends that CMS has wrongfully exercised dominion and control over Huntleigh Home Medical's equipment, inventory, bank accounts, accounts receivable, and trade secrets. CR 435-36. Huntleigh Home Medical's claim for misappropriation of trade secrets contends that Defendants used Huntleigh Home Medical's "customer list and customer information, customer contracts, billing software, pricing data, supplier and vendor lists" without authorization in order to "take over Huntleigh's existing operations." CR 436-37. Both claims therefore relate to Plaintiffs' allegation that CMS obtained Huntleigh Home Medical's assets without compensation. CR 435-36. Defendants were interacting with Huntleigh Home Medical solely as

part of the parties' agreement to conduct business together in the form of CMS. Accordingly, the trial court erred in concluding that these claims, which relate to CMS and its Operating Agreement, or are factually intertwined with the claim for breach of the parties' agreement to form and operate CMS, should not be compelled to arbitration.

Plaintiffs claim that CMS and Kalidindi tortiously interfered with Plaintiffs' agreement with Maddali to form CMS. CR 436. Given that CMS was, in fact, formed and thus that the agreement to form it was not interfered with, this claim obviously relates to the operation of CMS and thus is related to its Operating Agreement. The facts necessary to prove this claim are intertwined with the facts necessary to prove that the agreement between Plaintiffs and Maddali to form CMS was breached. The trial court erred in refusing to order this tortious interference claim to arbitration.

Plaintiffs next claim that Defendants interfered with Huntleigh Home Medical's memorandum of understanding with Hospice Source. *Id.* Huntleigh Home Medical did not enter into that memorandum of understanding with Hospice Source until January 13, 2012, which was after the parties agreed to form CMS and transition Huntleigh Home Medical's business to CMS. CR. 430-31. The Hospice Source relationship was thus, by necessity, a specific part of the transition of Huntleigh Home Medical's operations to CMS's operations. *Id.*

Moreover, Plaintiffs claim that Maddali's motivation for interfering with the relationship was "because he planned on simply taking the Huntleigh equipment for CMS." CR 431. Accordingly, this claim relates to CMS's operations and thus to its Operating Agreement, or is factually intertwined with the claim for breach of the parties' agreement to form and operate CMS, and should have been compelled to arbitration.

For their fraud-based claims, including fraud, fraud by nondisclosure, fraudulent inducement, negligent misrepresentation, civil conspiracy, and unjust enrichment, Plaintiffs allege that Defendants made misrepresentations regarding (1) the desire to start a new home health care company and wind down Huntleigh Home Medical's operations, (2) paying Huntleigh Home Medical for any assets used by CMS in its operations, and (3) having CMS making payroll. CR 437-39. Plaintiffs further allege that these statements were made "both before and after CMS was formed." CR 437. These claims clearly relate to the operation of CMS, or are factually intertwined with the claim for breach of the parties' agreement to form and operate CMS, and thus to its Operating Agreement. The trial court erred in not compelling Plaintiffs' fraud-based claims to arbitration.

Finally, Belle Elizabeth Flores's claim under the fraudulent transfer act arises from her complaint that "Defendants transferred assets of Huntleigh with the actual intent to hinder, delay, or defraud Belle, who was a creditor of Huntleigh" and that

they did so knowing that Huntleigh Home Medical would therefore incur "debts beyond its ability to pay as they became due." CR 439. The specific examples Ms. Flores gives are that "Defendants changed the identification labels on Huntleigh Home Medical's equipment in January 2013 [and] Defendants transferred to Maddali Realty at least $37,000 in 2013, with over $23,000 transferred in December 2013 alone." Plaintiffs claim that the change of identification labels was to "fool the banks and the IRS," thus allowing "CMS to simply take [the equipment] free and clear." Thus, Plaintiffs clearly allege that the transfer of Huntleigh Home Medical's assets by Defendants was for use by CMS for its operations. The payments to Maddali Realty were also to allow CMS's operations to continue. Ms. Flores's allegations thus relate to CMS and its Operating Agreement or are factually intertwined with the claim for breach of the parties' agreement to form and operate CMS and should have been compelled to arbitration.

**CONCLUSION AND PRAYER**

Obdulia, Ltd. agreed to arbitrate any claims arising out of or relating to the Operating Agreement. Because Plaintiffs acted as though they were personally parties to an agreement with Defendants and are pursuing claims based on or related to that agreement, and the document manifesting that agreement contains

an arbitration clause, the trial court erred in refusing to compel arbitration of Plaintiffs' claims.

WHEREFORE, Appellants, Crawford Medical Supplies, LLC, Sam Maddali, Prem Swaroop Kalidindi, and Maddali Realty, LLC, pray that this Court reverse the trial court's order denying Defendants' Plea in Abatement and Motion to Compel Arbitration, direct the trial court to issue an order compelling this case to arbitration, and grant Appellants all such further relief to which they are entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO,
PULLEN, BENSON & JONES, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
Telephone: (210) 222-9494
Facsimile: (210) 982-1610

By: */s/ Leslie Sara Hyman*
Elliott S. Cappuccio
Texas State Bar No. 24008419
ecappuccio@pulmanlaw.com
Leslie Sara Hyman
Texas State Bar No. 00798274
lhyman@pulmanlaw.com
Etan Z. Tepperman
Texas State Bar No. 24088514
etepperman@pulmanlaw.com

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)((3), I certify that, excluding those parts allowed to be excluded, the above and foregoing Brief of Appellant contains 4,463 words.



/s/ Leslie Sara Hyman
Leslie Sara Hyman

## CERTIFICATE OF SERVICE

I certify that on the 17th day of August, 2015, the foregoing Brief of Appellants was served in accordance with the Texas Rules of Appellate Procedure addressed as follows:

Mark Murphy
*mmnrphy@dslawpc.com*
Davis & Santos
Attorneys & Counselors, P.C.
112 East Pecan Street, Suite 900
San Antonio, Texas 78205

/s/ Leslie Sara Hyman
Leslie Sara Hyman